**AMERICAN LIBRARY ASSOCIATION,
et al., Appellees,**

v.

**Janet RENO, Attorney General of the
United States; Department of
Justice, Appellants.**

**No. 92–5271.**

United States Court of Appeals,
District of Columbia Circuit.

Feb. 28, 1995.

Before: EDWARDS, Chief Judge; WALD, SILBERMAN, BUCKLEY, WILLIAMS, GINSBURG, SENTELLE, HENDERSON, RANDOLPH, ROGERS and TATEL, Circuit Judges.

On Appellees' Suggestion For Rehearing *In Banc*

### ORDER

PER CURIAM.

Appellees' Suggestion For Rehearing *In Banc* and the response thereto have been circulated to the full court. The taking of a vote was requested. Thereafter, a majority of the judges of the court in regular active service did not vote in favor of the suggestion. Upon consideration of the foregoing, it is

ORDERED, by the court *in banc*, that the suggestion is denied.

Circuit Judges WALD and TATEL would grant the suggestion.

A statement of Circuit Judge TATEL, joined by Circuit Judge WALD, dissenting from the denial of rehearing in banc, is attached.

TATEL, Circuit Judge, with whom WALD, Circuit Judge, joins, dissenting from the denial of the suggestion for rehearing in banc:

The statute and regulations sustained by the panel require every "producer," from photographers to printers to page layout artists, to maintain copies of photo IDs of every performer, regardless of age, who is "visually depicted" engaging in "actual sexually explicit conduct." *See* 18 U.S.C. § 2257(a) & (b) (1988 & Supp. V 1993); 28 C.F.R. § 75.2 (1994). These records must be cross-indexed by every name that the performer has ever used, and by every work in which the depictions appear. 18 U.S.C. § 2257(b); 28 C.F.R. § 75.3. Every book, magazine, photograph, videotape or movie containing such depictions must have affixed to it, in a prominent place, a label disclosing the name and address of the individual who maintains the records. 18 U.S.C. § 2257(e); 28 C.F.R. § 75.6, § 75.8. A violation of these record-keeping requirements is a felony. A first offense is punishable by a fine and up to two years in prison; a second offense may result in up to five years in prison. 18 U.S.C. § 2257(i).

The stated purpose of these record-keeping requirements—furthering the prosecution of child pornographers—is compelling. As applied to these petitioners, however, the statute's burdens on speech may well be too great and its effects too tenuous for it to be constitutional. Even if it is content-neutral—a point of which I am not convinced—there is a serious risk that it "burden[s] substantially more speech than is necessary to further the government's legitimate interests." *Ward v. Rock Against Racism,* 491 U.S. 781, 799, 109 S.Ct. 2746, 2758, 105 L.Ed.2d 661 (1989).

To begin with, I doubt that the statute can accomplish its purpose. At best, it may deter some older-looking teens who are under eighteen from modelling for sexually explicit material, and prevent some producers from mistakenly using under-age teens as models. The record, however, is devoid of any evidence indicating how extensive these effects will be. The statute may not deter older minors, for example, since they can circumvent it by procuring fake IDs. Producers who knowingly use minors in sexually explicit materials are already subject to criminal penalties. This statute will not help prosecute them, since these records may not be used as evidence "with respect to any violation of law" except the record-keeping statute itself. 18 U.S.C. § 2257(d). The only class of producers whose behavior this statute is likely to influence—those who ignore the age of their models but would nonetheless refuse to employ individuals they knew were minors—could be equally deterred, with no corresponding regulatory burden on protected speech, by rewriting the child pornography statutes to impose criminal liability upon those who recklessly or negligently violate them. *See United States v. U.S. District Court,* 858 F.2d 534, 542–43 (9th Cir.1988) (reading such a requirement into 18 U.S.C. § 2251(a), which bars the production of child

pornography); *cf. United States v. X–Citement Video,* — U.S. —, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994) (reading into 18 U.S.C. § 2252, which bars the distribution of child pornography, a requirement that the distributor know that the material includes minors). While such an approach might allow a few individuals to escape liability by establishing that they had made a reasonable mistake about the age of the model, "even as compelling a societal interest as the protection of minors must occasionally yield to specific constitutional guarantees." *United States v. U.S. District Court,* 858 F.2d at 543.

Not only is the statute thus unlikely to accomplish its otherwise compelling objective, but whatever marginal deterrence the statute achieves may well be overshadowed by its unprecedented imposition of a permanent and pervasive regulatory burden on a single class of speakers. All those who include sexually explicit material in their work will be affected, including some of society's most biting commentators on sex and sexuality. While many people may find speech depicting "actual sexually explicit conduct" offensive, and while some may welcome anything that limits its production, the vast majority of such speech is nonetheless protected by the First Amendment. *See id.,* 858 F.2d at 541–42 (noting that non-obscene pornography is fully protected by the First Amendment, and that no majority of the Supreme Court has ever supported a contrary holding). This statute imposes upon speakers a difficult dilemma: either comply at great cost of time, money and effort or risk the penalty of up to five years in prison. Either way, its impact on protected speech could be significant.

Petitioners' filings in the district court reflect that in addition to being deterred by the burdens imposed by this statute, speakers engaging in protected speech will be muffled in other ways. By requiring these often controversial artists to reveal their studio or home addresses on the face of their work, for example, the statute subjects them to the risk of harassment and physical threat. Petitioners also point out that the statute may further impede the work of artists and producers when adult models—whose depiction does not violate any law—nonetheless refuse to participate because they do not want their names, photos, addresses or histories associated with their sexually explicit work. Such an association is quite likely to occur, since the records created under the statute will be available not only to the primary producers, but to secondary producers, law enforcement officers, and perhaps others as well. In the end, the greatest effect of this statute may thus well be to restrict not child pornography, but rather the flow of protected speech into the hands of galleries, stores, libraries, artists, and every adult who desires to see or hear it.

Like so many other First Amendment cases that deal with speech on the borders of social acceptability, this case is not just about pornography. It is about all speech. If we ignore our First Amendment guarantees in the face of words and thoughts that are unpopular, unconventional, or even detestable, we create precedents that may later be used to silence the speech we value.

The District Court found this statute unconstitutional, and the panel which reversed that decision was itself split. Considering the scale of the statutory requirements and their certain effect upon some protected speech, this case is of exceptional importance and warrants *in banc* review. I respectfully dissent from the court's denial of the suggestion for rehearing *in banc.*