**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 23 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SUNDANCE ASSOCIATES, INC., a Colorado corporation,

    Plaintiff-Appellee,

v.

JANET RENO, Attorney General of the United States, in her official capacity only; UNITED STATES DEPARTMENT OF JUSTICE,

    Defendants-Appellants.

No. 96-1501

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 95-N-2592)**

---

Arthur M. Schwartz (Michael W. Gross, Cindy D. Schwartz, and Gary M. Kramer, with him on the brief) of Arthur M. Schwartz, P.C., Denver, Colorado, for Plaintiff-Appellee.

Anne M. Lobell (Jacob M. Lewis with her on the briefs), United States Department of Justice, Washington, D.C., for Defendants-Appellants.

---

Before **BALDOCK** and **BRORBY**, Circuit Judges, and **BROWN**,[*] District Judge.

---

    [*] The Honorable Wesley E. Brown, Senior District Judge, District of Kansas, sitting by designation.

**BRORBY**, Circuit Judge.

_____

The Attorney General and the United States Department of Justice ("the government") appeal the United States District Court for the District of Colorado's award of summary judgment for Sundance Associates ("Sundance"), holding 28 C.F.R. § 75.1(c)(4)(iii) is an invalid implementation of 18 U.S.C. § 2257. This court assumes jurisdiction pursuant to 28 U.S.C. § 1291 and affirms.

Concerned about the exploitation of children by pornographers, Congress enacted the Child Protection and Obscenity Enforcement Act of 1988, Pub. L. No. 100-690, Title VII, § 7513(a), 102 Stat. 4187, 4485-4503 (significantly amended by the Child Protection Restoration and Penalties Enhancement Act of 1990, Pub. L. No. 101-647, Title III, §§ 301(b), 311, 104 Stat. 4808, 4816-17) to require producers of sexually explicit matter to maintain certain records concerning the performers[1] that might help law enforcement agencies monitor the industry. *See*

_____

[1] The statute requires the producers of such matter to "ascertain, by examination of an identification document containing such information, the performer's name and date of birth," to "ascertain any name, other than the performer's present and correct name, ever used by the performer including maiden name, alias, nickname, stage, or professional name," and to record this information. 18 U.S.C. § 2257(b).

18 U.S.C. § 2257. Violations of these record keeping requirements are criminal offenses punishable by imprisonment for up to two years for first-time offenders and up to five years for repeat offenders.[2] *See* 18 U.S.C. § 2257(i).

The record keeping requirements apply to "[w]hoever *produces*" the material in question. 18 U.S.C. § 2257(a) (emphasis added). The statute defines "produces" as

> to produce, manufacture, or publish any book, magazine, periodical, film, video tape or other similar matter and includes the duplication, reproduction, or reissuing of any such matter, but does not include mere distribution or any other activity which does not involve hiring, contracting for[,] managing, or otherwise arranging for the participation of the performers depicted.

18 U.S.C. § 2257(h)(3).

Pursuant to her authority to issue regulations to carry out the statutory requirements, *see* 18 U.S.C. § 2257(g), the Attorney General issued regulations implementing the statute on April 24, 1992.[3] *See* 57 Fed. Reg. 15017-022 (1992);

---

[2] With the Protection of Children Against Sexual Exploitation Act of 1977, Pub. L. No. 95-225, § 2(a), 92 Stat. 7 (1978), Congress had already criminalized the production and distribution of materials visually depicting minors engaged in sexually explicit conduct. *See* 18 U.S.C. §§ 2251, 2252.

[3] In addition to the record keeping requirements specifically discussed in § 2257, the Attorney General's regulations require the persons to whom it applies to retain copies of the performers' identification documents, to cross-index the records by "[a]ll names(s) of each performer, including any alias, maiden name,

28 C.F.R. § 75.

The extent to which the record keeping requirements apply to various persons and businesses is one area the regulations attempt to define. Under the regulatory language, the requirements apply to "[a]ny *producer* of any book, magazine, periodical, film, videotape, or other matter that contains one or more visual depictions of actual sexually explicit conduct made after November 1, 1990." 28 C.F.R. § 75.2(a) (emphasis added). The regulation defines "producer" as:

> [A] person, including any individual, corporation, or other organization, who is a *primary producer* or a *secondary producer*.
>
> (1) A *primary producer* is any person who actually films, videotapes, or photographs a visual depiction of actual sexually explicit conduct.
>
> (2) A *secondary producer* is any person who produces, assembles, manufactures, publishes, duplicates, reproduces, or reissues a book, magazine, periodical, film, videotape, or other matter intended for commercial distribution that contains a visual depiction of actual sexually explicit conduct.
>
> (3) The same person may be both a primary and a secondary producer.
>
> (4) *Producer* does not include persons whose activities relating to the

---

nickname, stage name or professional name of the performer; and according to the title, number, or other similar identifier of each book, magazine, periodical, film, videotape, or other matter," and to maintain the records for as long as the producer is in business, plus five years. 28 C.F.R. §§ 75.2(a)(1), 75.3, 75.4.

visual depiction of actual sexually explicit conduct are limited to the following:

(i) Photo processing;

(ii) Distribution; or

(iii) Any activity, other than those activities identified in paragraphs (c)(1) and (2) of this section, that does not involve the hiring, contracting for, managing, or otherwise arranging for the participation of the depicted performers.

28 C.F.R. § 75.1(c) (emphasis in original). The ultimate question in this case is whether this definition of "producer" clashes impermissibly with the statutory definition of "produces."

Sundance publishes five magazines: *Odyssey*, *Odyssey Express*, *Connexion*, *Looking Glass*, and *UnReal People*. These magazines print personal or commercial announcements by individuals seeking to contact others with similar sexual interests. The announcements are typically accompanied by pictures, most of which are sexually explicit. The pictures are submitted voluntarily to Sundance by the individuals advertising in the magazines. Sundance, therefore, does not participate in the production of the photographs it publishes in its various magazines.

Facing possible criminal liability as a "secondary producer" under the

regulation, Sundance filed a complaint seeking declaratory relief in the district court. The parties filed cross-motions for summary judgment in the district court.

The court ruled for Sundance, finding 28 C.F.R. § 75.1(c)(4)(iii) to be an invalid implementation of 18 U.S.C. § 2257.[4] Applying *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), the district court found the intent of Congress to be clear from the language of the statute and, consequently, did not inquire into the legislative history of the Act. Finding "[t]he plain meaning of this section of the Restoration Act clearly exempts persons whose activities '... include mere distribution or any other activity which does not involve hiring, contracting for[,] managing, or otherwise arranging for the participation of the performers depicted,'" the court determined the scope of the regulation's coverage to be impermissibly broader than that intended by the statute.

The government raises one issue on appeal: whether the district court erred

_____

[4] The district court also ruled that Sundance had standing to challenge the validity of 28 C.F.R. § 75.1(c) but lacked standing to challenge the validity of any other aspects of the regulation or statute because it could not demonstrate "a realistic danger of sustaining a direct injury" once the court declared § 75.1(c)(4)(iii) invalid. Neither of these issues was raised on appeal.

in finding 28 C.F.R. § 75.1(c)(4)(iii) to be an invalid implementation of 18 U.S.C. § 2257.[5]

This court reviews the grant of a motion for summary judgment de novo, applying the same legal standard used by the district court. *See Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. If there is no genuine issue of material

---

[5] This is not the only Circuit to have addressed the validity of 28 C.F.R. § 75. Although it did not face the precise question raised in this case, the United States Court of Appeals for the District of Columbia invalidated the regulation's requirement that producers keep records as long as they remain in business, and the regulation's record keeping requirement as applied to printers, film processors, duplicators, and similar persons who simply perform services and return the product to the producer. *American Library Ass'n v. Reno*, 33 F.3d 78, 91, 93 (D.C. Cir. 1994) (upholding the constitutionality of the record keeping requirements as applied to the appellants in that case). To the extent any of those persons may be considered "secondary producers" (for instance, as assemblers or manufacturers), this ruling supports Sundance's argument that the statute was not meant to apply to everyone who could be considered "to produce, manufacture, or publish" or "duplicat[e], reproduc[e], or reissu[e]."

fact in dispute, then we next determine if the substantive law was correctly applied by the district court." *Kaul*, 83 F.3d at 1212 (quoting *Wolf v. Prudential Ins. Co.*, 50 F.3d 793, 796 (10th Cir. 1995)).

The facts in this case are not in dispute. The only question is whether the district court was correct in its legal analysis of the statute and regulation. We review de novo a district court's interpretation of a statute. *See United States v. Diaz*, 989 F.2d 391, 392 (10th Cir. 1993).

When faced with a challenge to the validity of a regulation, we apply the analytical framework provided by the United States Supreme Court in *Chevron*. As an initial matter, we decide "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. "'If the statute is clear and unambiguous "that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." ... The traditional deference courts pay to agency interpretation is not to be applied to alter the clearly expressed intent of Congress.'" *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) (quoting *Board of Governors of Fed. Reserv. Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 368 (1986) (quoting *Chevron*, 467 U.S. at 842-43)). If, however, the statute does not speak directly to the question at issue

or is ambiguous, the court, giving considerable weight to the agency's interpretation, must decide if the agency's answer is "a permissible construction of the statute." *Chevron*, 467 U.S. at 843-44.

In this case, we need go no further than the initial analysis. "[T]he text and reasonable inferences from it give a clear answer against the Government, and that ... is 'the end of the matter.'" *Brown v. Gardner*, 513 U.S. 115, 120 (1994) (quoting *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993) (quoting *Chevron*, 467 U.S. at 842)). We agree with the district court that "[t]he plain meaning of [§ 2257((h)(3)] clearly exempts persons whose activities '... include mere distribution or any other activity which does not involve hiring, contracting for[,] managing, or otherwise arranging for the participation of the performers depicted.'"

Under the statutory scheme, the requirements apply to persons or organizations who "produce, manufacture, or publish" any of the identified matter, including those involved in "duplication, reproduction, or reissuing" of the matter, but not including those who merely distribute or whose activity "does not involve hiring, contracting for[,] managing, or otherwise arranging for the participation of the performers depicted." 18 U.S.C. § 2257(h)(3). The plain

language of the statute establishes a group possibly subject to its requirements (including those who "produce, manufacture, or publish" and those involved in "duplication, reproduction, or reissuing") and then excludes from that group those who basically have had no contact with the performers (mere distributors and others not involved in the "hiring, contracting for[,] managing, or otherwise arranging for the participation of the performers depicted").[6]  *Id.*

The Attorney General's regulatory definition of producer follows the statute in establishing a class of individuals and organizations possibly subject to the record keeping requirements, but it fails to exclude persons from the class that the statute requires.  The regulation conditions its exclusion of those "not involve[d in] the hiring, contracting for, managing, or otherwise arranging for the participation of the depicted performers" to persons who are not a primary or secondary producer.  28 C.F.R. § 75.1(c)(4)(iii).  The statute makes no such condition.  This is not a minor matter, because, as will be explained in detail

---

[6]  Without deciding the issue, another Circuit appeared to read the final clause in § 2257(h)(3) in a similar manner.  *American Library Ass'n v. Barr*, 956 F.2d 1178, 1186 n.5 (D.C. Cir. 1992).  In that case, the court stated the 1990 amendment to the statute, which added the clause in issue, "clarified the definition of 'produces' to exclude 'mere distribution or any other activity which does not involve hiring, contracting for[,] managing, or otherwise arranging for the participation of the performers depicted.'"  *Id.*

below, the practical effect of the regulatory scheme is that the exclusion cannot be applied to anyone. "[A]n agency's interpretation of a statute is not entitled to deference when it goes beyond the meaning that the statute can bear." *MCI Telecomm. Corp. v. American Tel. & Tel. Co.*, 512 U.S. 218, 234 (1994). An agency's rulemaking power is not "the power to make law," it is only the "'power to adopt regulations to carry into effect the will of Congress as expressed by the statute.'" *Mabry v. State Bd. of Community Colleges & Occupational Educ.*, 813 F.2d 311, 315 (10th Cir.) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 213-14 (1976) (further quotation marks and citations omitted), *cert. denied*, 484 U.S. 849 (1987).

Attempting to justify its regulation, the government urges upon this court a tortured reading of the statute. The government contends the second part of § 2257(h)(3), beginning with "does not include mere distribution," was actually intended to broaden the scope of the statute. The government's approach leads us down a path toward Alice's Wonderland, where up is down and down is up and words mean anything. The words "but *does not include* ... any other activity which does not involve hiring, contracting for[,] managing, or otherwise arranging for the participation of the performers depicted," the argument goes, were not intended to "not include" anyone listed above, but were actually

intended by implication only to include more activities in the definition. This is too much of a stretch. In reviewing statutes, courts do not assume the language is imprecise, as the government would have us do. *See United States v. LaBonte*, ___ U.S. ___, 117 S. Ct. 1673, 1677 (1997). Rather, we assume that in drafting legislation, Congress says what it means. *Id.* This is not a case of verbal ambiguity presenting accepted alternative meanings; it is one of an agency twisting words to reach a result it prefers. Although § 2257(h)(3) was poorly drafted and should never be used as a model of the English language, its intent is clear to this court.

One wonders, looking at the regulation, why the government did not follow the logic of its own argument when implementing the regulation.[7] If the second clause of the statute actually was intended to broaden the definition of produces to include activities that "involve hiring, contracting for[,] managing, or

---

[7] Without explanation, the government asserts "the regulations make clear that the statute applies to all activities which 'involve hiring, contracting for[,] managing, or otherwise arranging for the participation of the performers depicted[,]'regardless of whether or not the entity is a producer by virtue of being engaged in activities listed in the first clause." The regulation does not do this. The regulation defines a producer as a primary or secondary producer. The definitions of primary and secondary producers do not include activities that involve hiring, contracting for, managing, or otherwise arranging for the participation of the performers. *See* 28 C.F.R. § 75.1(c).

otherwise arranging for the participation of the performers depicted," it seems odd that none of those activities are included in the regulatory definition of producer. The regulation defines a producer as a person who is a primary or secondary producer, yet the definitions of primary and secondary producer do not address hiring, contracting for, managing, or otherwise arranging for participation, as they should according to the government's arguments. *See* 28 C.F.R. § 75.1(c)(1)-(3).

Explaining its position, the government states "[t]he structure of the statute, which identifies 'mere distribution' as the activity specifically excluded from the definition of 'produces,' suggests that Congress did not intend to exempt actual producers from the definition, but only those whose involvement in production is wholly tangential." The problem with this position is the statute does not identify "mere distribution" as the only activity specifically excluded, but also "any other activity" basically not involving contact with the performers. 18 U.S.C. § 2257(h)(3). The government's explanation simply ignores the obvious import of the final clause of the statute.

The government also argues the Attorney General properly rejected the district court's reading of the statute because if "[S]ection 2257(h)(3) is

interpreted that way, the clause 'includ[ing] the duplication, reproduction, or reissuing of any such matter' would be read out of the statute, because such activities would not necessarily involve the hiring, contracting for, or managing of performers." This is wrong. The clause would not be read out of the statute because it is easy to imagine persons duplicating, reproducing, or reissuing material they originally created who would have had the requisite contact with the performers, and as a result such persons would be subject to the requirements of the statute. Just because the exclusionary clause would make the statute inapplicable to some duplicators, reproducers, and reissuers is no reason to justify reading it out of the statute — narrowing the field is the very nature of exclusions.

The government further argues its comprehensive regulatory scheme is necessary because of the difficulties involved in enforcing the record keeping requirements only on those producers who hire, contract for, manage, or otherwise make arrangements for the participation of sexual performers.[8] "[S]uch considerations address themselves to Congress, not to the courts." *MCI*

---

[8] This clause may not narrow application of the statute as significantly as the government suggests. "[A]rranging for the participation of the performers depicted," may well encompass a broad range of activities, although that will be for later courts to decide.

*Telecommunications,* 512 U.S. at 234 (quoting *Armour Packing Co. v. United States*, 209 U.S. 56, 82 (1908)). Of course, this court is sympathetic to the purported[9] goals of this legislation — preventing the sexual exploitation of children. And although it seems the Attorney General has identified a problem with its effective enforcement — that it is drawn in such a way as to make it narrow in application[10] — neither the court nor the Attorney General has the authority to rewrite a poor piece of legislation (if, indeed, that is what it is). That responsibility lies solely with Congress.

Even if we assumed for purposes of this analysis that the statutory language was unclear, and proceeded to the second stage of *Chevron* analysis, we would have to find the Attorney General's regulation to be an impermissible

---

[9] Because the statute expressly forbids the use of the mandated records, directly or indirectly, "as evidence against any person with respect to any violation of law," other than the failure to maintain the records in the first place, it might only be of limited use in aiding enforcement of child pornography laws. 18 U.S.C. § 2257(d)(1); *see American Library Ass'n v. Reno*, 47 F.3d 1215, 1216 (D.C. Cir. 1995) (Tatel, J., dissenting from denial of suggestion for rehearing in banc).

[10] One might question whether the statute is narrowly drawn by mistake or if it was narrowly drawn on purpose, because of a considered congressional determination that it could be subject to constitutional attack, as an earlier version had been. *See American Library Ass'n v. Barr*, 956 F.2d at 1186-87; *American Library Ass'n v. Thornburgh*, 713 F. Supp. 469 (D.D.C. 1989).

construction of the statute. The regulation makes the final part of § 2257(h)(3), beginning with "or any other activity" superfluous. Although we afford deference to the Attorney General's interpretation of a statute under her purview, we cannot overlook an interpretation that flies in the face of the statutory language. *See Bridger Coal Co./Pacific Minerals, Inc. v. Director, Office of Workers' Compensation Programs, U.S. Dep't of Labor*, 927 F.2d 1150, 1153 (10th Cir. 1991) ("We will not construe a statute in a way that renders words or phrases meaningless, redundant, or superfluous.").

The regulation defines "*producer* as any "individual, corporation, or other organization, who is a *primary producer* or *secondary producer*." 28 C.F.R. § 75.1(c) (emphasis in original). Obviously then, if individuals, corporations, or other organizations are not primary or secondary producers, they are not producers for purposes of the regulation. That means, by definition, producers *must* engage in the activities listed in either 28 C.F.R. § 75.1(c)(1) or (2). *See* 28 C.F.R. § 75.1(c). For the exception to apply, however, one cannot be engaged in the activities listed in 28 C.F.R. § 75.1(c)(1) or (2). *See* 28 C.F.R. § 75.1(c)(4)(iii). Therefore, the exception is meaningless; it excepts those persons and organizations to which the regulation does not apply in the first place and it does not except any of the persons and organizations to which the

regulation does apply.[11]

We have to assume Congress intended its words "but does not include ... any other activity which does not involve hiring, contracting for[,] managing, or otherwise arranging for the participation of the performers depicted" to have some meaning and effect. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("In construing a statute we are obliged to give effect, if possible, to every word Congress used."). Because the government's construction makes these words mere surplusage, it cannot stand.

The government correctly notes the district court should not have held all of 28 C.F.R. § 75.1(c)(4)(iii) invalid. The flaw in the subsection of the regulation arises from the clause "other than those activities identified in paragraphs (c)(1)

---

[11] This raises a question about the Attorney General's specific exclusion for photo processing. 28 C.F.R. § 75.1(c)(4)(i). Unlike the other specific exclusion, distribution, photo processing is not mentioned in the statute. If photo processing is one of the activities listed in the definition of secondary producer, for example producing or manufacturing (it clearly does not fall into the category of primary producer), what makes it different than many other similar activities for which there is no exclusion? If it does not fall into the category of secondary producer, then no exclusion is necessary in the first place. Obviously, even the Attorney General recognized Congress did not intend for everyone falling into the categories of production, manufacture, publication, duplication, reproduction, and reissuing to be subject to the record keeping requirements, or the regulation would not have included a specific exclusion for photo processing.

and (2) of this section." 28 C.F.R. § 75.1(c)(4)(iii)  Our decision, therefore, necessitates only that clause be stricken from § 75.1(c)(4)(iii).

For the foregoing reasons, the district court's decision is **AFFIRMED**; however, we remand to the district court so it may issue a judgment striking from § 75.1(c)(4)(iii) only the clause identified above.