**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 25 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BENNIE P. CHAVEZ,

    Plaintiff-Appellant,

    v.

COORS BREWING COMPANY,

    Defendant-Appellee.

No. 98-1109
(D.C. No. 97-WY-1228-AJ)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **BALDOCK**, and **BRISCOE**, Circuit Judges.

Plaintiff Bennie Chavez appeals the district court's entry of summary judgment in favor of defendant Coors Brewing Company on his claims of national origin discrimination (in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq* .), disability discrimination (in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq* .), and breach of contract. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

I.

Plaintiff began working for defendant in 1976 as a general brewery worker. He later transferred to its construction department as an electrical trainee and was promoted to electrical specialist in 1987. He held that position, which was retitled "electrical journeyman," until his layoff in 1996.

Defendant created twenty new "senior specialist" positions in its construction department in 1995 to shift the department's emphasis from design engineering to facilities maintenance. According to Larry Seymour, defendant's vice president of engineering and construction, the company had concluded it would be more cost-efficient to contract out much of the work historically done by the construction department and to change the focus of the department to "heavy maintenance." Seymour decided to select the new workers based on merit rather than seniority because he thought some senior workers might not have the necessary technical and analytical skills.

At the same time the new positions were created, Jay Martine, director of defendant's construction department, announced a significant downsizing in personnel. According to one of plaintiff's former colleagues, Martine told employees the new senior specialists would be excluded from any reduction-in-force while employees not selected for the positions would be subject to layoff pursuant to the company's seniority policy.

Working closely with a professor at Colorado State University, Martine and his staff designed a selection process to fill the new senior specialist positions (submission of questionnaires to employees regarding essential skills, establishment of screening criteria, development of an appropriate exam) to ensure the process was standardized, reliable, job-related, and procedurally fair. All applicants were required to have a Colorado journeyman's license. The selection committee examined each applicant's attendance record, safety rate, prior evaluations, welding quality, training records, score on a written test designed to identify the desired skills, interview, computer skills, and certification in additional crafts. Martine and his staff then ranked the applicants by their scores, and the top candidates received offers for the new positions.

Plaintiff was one of forty-eight applicants for the positions. He was ranked thirty-second and did not receive an offer for one of the twenty available positions. The construction department terminated forty-one employees on March 29, 1996, including eighteen electrical journeymen. One electrical journeyman voluntarily left the company and two others used their seniority to "bump" to different positions. Defendant then terminated the fifteen least-senior electrical journeymen, including plaintiff, who had waived his right to "bump" to a different position.

Plaintiff exhausted his administrative remedies and filed this action in June

1997. He alleged disparate treatment and disparate impact discrimination on the basis of national origin and disability, in violation of Title VII and the ADA. He also asserted claims for breach of express contract, breach of implied contract, and promissory estoppel. The district court granted summary judgment in favor of defendant on all claims.

## II.

This court reviews a grant of summary judgment de novo, applying the same legal standard used by the district court. Sundance Assocs., Inc. v. Reno, 139 F.3d 804, 807 (10th Cir. 1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. If there is no genuine issue of material fact in dispute, then we next determine if the substantive law was correctly applied by the district court." Id. (citation and quotation omitted).

## III.

Plaintiff appeals the district court's rulings on his Title VII, ADA, and breach of contract claims. He has abandoned his implied contract and promissory

estoppel claims.

## Title VII Disparate Treatment Claim

Plaintiff contends defendant discriminated against him on the basis of national origin by creating separate senior specialist positions that were not subject to the company seniority policy and were comprised primarily of non-minorities. Plaintiff argues if those positions were not established, he would have had sufficient seniority to avoid the reduction-in-force. To prevail on his disparate treatment claim, plaintiff must show defendant either created the senior specialist group with the *intent* of discriminating against Hispanics, or intentionally refused to make plaintiff a senior specialist because of a discriminatory animus. See Bangerter v. Orem City Corp. , 46 F.3d 1491, 1501 (10th Cir. 1995); Sorensen v. City of Aurora , 984 F.2d 349, 352 (10th Cir. 1993). (Any negative impact the creation of the senior specialist positions may have had on Hispanics must be examined as part of plaintiff's disparate impact claim.)

Plaintiff presents no direct evidence of discrimination and must rely on the proof scheme set forth in McDonnell Douglas Corp. v. Green , 411 U.S. 792 (1973). Under this framework, plaintiff must first establish a prima facie case of discrimination. If he does so, the burden shifts to defendant to articulate a legitimate, facially non-discriminatory explanation for its adverse employment decision. EEOC v. Flasher Co. , 986 F.2d 1312, 1316 & n.4 (10th Cir. 1992).

Assuming defendant meets that burden, all presumptions of discrimination drop from the case. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993). The burden then shifts back to plaintiff to prove by a preponderance of the evidence that defendant's proffered reasons for the challenged action are merely a pretext for discrimination. Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995).

We assume, as did the district court, that plaintiff can satisfy his prima facie burden. Defendant points out that plaintiff ranked thirty-second of forty-eight applicants for the twenty positions. Plaintiff insists this explanation is mere pretext for unlawful discrimination. Pretext may be demonstrated by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (citation and quotation omitted). Conjecture is insufficient. Id.

In support of his pretext argument, plaintiff contends two members of the position selection panel exhibited long-standing prejudice toward minorities. However, his "evidence" consists exclusively of rank speculation, hearsay, and conclusory allegations, none of which is sufficient to withstand a properly supported summary judgment motion. See Thomas v. IBM, 48 F.3d 478, 485

(10th Cir. 1995);  Nichols v. Hurley , 921 F.2d 1101, 1113 (10th Cir. 1990). Although plaintiff references comments by various supervisors, these isolated comments, unrelated to the specific challenged action, are not sufficient to show discriminatory animus in adverse personnel decisions.       Cone v. Longmont United Hosp. Ass'n , 14 F.3d 526, 531 (10th Cir. 1994).  Plaintiff also suggests creation of the senior specialist positions was unnecessary as the responsibilities of those positions differed little from work performed by other construction department personnel.  Absent competent evidence of impermissible motives, it is not the role of the judiciary to second-guess the propriety of an employer's business decisions. Furr v. Seagate Tech., Inc.   , 82 F.3d 980, 986 (10th Cir. 1996).  We find no such evidence in the record.

### Title VII Disparate Impact Claim

Disparate impact claims involve facially neutral employment practices that have an adversely different    *effect*  on a particular group.     International Bhd. of Teamsters v. United States   , 431 U.S. 324, 335-36 n.15 (1977).  Unlike disparate treatment claims, disparate impact causes of action require no findings of intentional discrimination.    Ortega v. Safeway Stores, Inc.   , 943 F.2d 1230, 1242 (10th Cir. 1991).  To establish a prima facie case of disparate impact discrimination, plaintiff must prove a "specific identifiable employment practice or policy caused a significant disparate impact on a protected group."        Id.

-7-

Plaintiff may rely on statistics to support his case, but "any statistical analysis must involve the appropriate comparables . . . and must cross a threshold of reliability before it can establish even a prima facie case of disparate impact." Id. at 1243 (citations omitted). Assuming plaintiff can make such a showing, the burden of proof (not just the burden of persuasion), see Fitzpatrick v. City of Atlanta , 2 F.3d 1112, 1117 n.5 (11th Cir. 1993), shifts to the employer to demonstrate the challenged practice is "job related for the position in question and consistent with business necessity." 42 U.S.C. § 2000e-2(k)(1)(A)(i). This case fails at the prima facie stage of the analysis.

Plaintiff alleges creation of a separate group of senior specialists had an adverse impact on Hispanics. Although plaintiff attacks the methodology and criteria used in the selection of senior specialists, he does not identify any particular aspect of the process that had a disparate impact on Hispanics. "Especially in cases where an employer combines subjective criteria with the use of more rigid standardized rules or tests, the plaintiff is . . . responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities." Watson v. Fort Worth Bank & Trust , 487 U.S. 977, 994 (1988) (plurality opinion). [1] A general assault on the

---

[1] Congress codified this principle in 1991. "With respect to demonstrating that a particular employment practice causes a disparate impact [on members of a

(continued...)

racial composition of the workforce will not suffice to create an actionable disparate impact claim. "Just as an employer cannot escape liability under Title VII by demonstrating that, 'at the bottom line,' his work force is racially balanced, . . . a title VII plaintiff does not make out a case of disparate impact simply by showing that, 'at the bottom line,' there is racial imbalance in the work force." Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 656-57 (1989).

Even assuming the senior specialist selection process as a whole constituted a sufficiently specific practice to support a disparate impact claim, plaintiff still cannot establish a prima facie case. A change of policy from seniority-based to skill-based evaluations does not, without more, establish evidence of unlawful discrimination. See Jones v. Unisys Corp., 54 F.3d 624, 632 (10th Cir. 1995). Indeed, section 703(h) of Title VII clothes seniority- and merit-based tests with particular protection.

> Notwithstanding any other provision . . ., it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system . . . provided that such differences are not the result of an

---

[1](...continued)
protected class], the complaining party shall demonstrate that each particular challenged employment practice causes a disparate impact, except that if the complaining party can demonstrate to the court that the elements of a respondent's decisionmaking process are not capable of separation for analysis, the decisionmaking process may be analyzed as one employment practice." 42 U.S.C. § 2000e-2(k)(1)(B)(i).

intention to discriminate because of race, color, religion, sex, or national origin, nor shall it be an unlawful employment practice for an employer to give and to act upon the results of any professionally developed ability test provided that such test, its administration or action upon the results is not designed, intended or used to discriminate because of race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(h). Further, there is no evidence of national origin disparity. The small number of *overall* applicants for the senior specialist positions renders a statistical analysis relatively unhelpful. See Fallis v. Kerr-McGee Corp., 944 F.2d 743, 746 (10th Cir. 1991). The fact that only one of five Hispanic senior specialist applicants was selected, while nineteen of forty-three non-Hispanic candidates were selected, does not state a prima facie case of disparate impact discrimination. The inability to rely on statistics does not minimize plaintiff's burden to prove an adverse effect on Hispanic candidates. If anything, the absence of statistics makes plaintiff's job more difficult.

Putting aside these shortcomings, plaintiff cannot show the four unsuccessful Hispanic applicants were qualified for the positions. See Watson, 487 U.S. 997 (alleged disparities "based on an applicant pool containing individuals lacking minimal qualifications for the job [is] of little probative value"). The record suggests two of the unsuccessful Hispanic candidates did not have the required license. The only "evidence" that the remaining unsuccessful Hispanics were qualified consists of their own affidavits, which contain mostly hearsay and speculation.

-10-

Despite plaintiff's protestations, it is his burden at the summary judgment stage to establish a prima facie case. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Without competent evidence of an adverse impact on Hispanics, plaintiff's disparate impact cause of action must fail. See Vitug v. Multistate Tax Comm'n, 88 F.3d 506, 514 (7th Cir. 1996).

## ADA Claim

Plaintiff's sole evidence on his ADA claim consists of a single hearsay comment that, four years prior to his discharge, one of his supervisors told a former colleague that plaintiff should have been fired because of his back problems. This remark cannot support an ADA claim. See Cone, 14 F.3d at 531. Plaintiff also speculates his one-day absence for back problems five years earlier was used against him in the selection process. Other than rank speculation, there is no evidence defendant used plaintiff's "disability absence" as a basis for not selecting him for one of the positions.

## Breach of Contract Claim

Plaintiff appears to claim defendant violated its seniority policy by using merit rather than seniority to select the senior specialists, and by exempting the senior specialists from the seniority policy in conducting the layoffs. We must reject both claims. First, there is no language in defendant's seniority policy mandating how new positions must be filled. Defendant's personnel policy on

-11-

internal placement/intercompany bidding specifically states that, with the exception of certain positions not relevant here, all "job selections are based on skill and ability." Aplt's App. at 176. Second, defendant's policy entails conducting reductions-in-force by position, i.e., by "job classification." Plaintiff's position (electrical journeyman) was considered a different classification than the position of senior specialist.

Plaintiff suggests the senior specialist positions are identical to the electrician positions subjected to the reduction-in-force in March 1996. There is evidence in the record, however, that senior specialists had more responsibility and performed significantly different tasks than other construction department personnel. Plaintiff's evidence to the contrary consisted of the affidavit of a senior specialist who alleged (1) plaintiff was qualified to do the work of senior specialists, and (2) the work of senior specialists required the same skills utilized by other electricians. The fact that plaintiff may be able to perform the work does not mean the positions are identical. Nor does the fact that certain responsibilities may overlap suggest deception on the part of defendant. Many of the duties and responsibilities of senior specialists are unique to that position. See id. at 260-61. Defendant had a right to treat the positions differently under its seniority policy and did not breach the policy in conducting the March 1996 reduction-in-force.

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge