FILED
United States Court of Appeals
Tenth Circuit

October 22, 2007

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CLARA NICHOLS; MONTY
NICHOLS,

      Plaintiffs-Appellants,

v.

BOARD OF COUNTY
COMMISSIONERS OF THE
COUNTY OF LA PLATA,
COLORADO,

      Defendant-Appellee.

No. 06-1427

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 04-cv-1387-WYD-MEH)**

---

William E. Zimsky, William E. Zimsky, P.C., Durango, Colorado, for Plaintiffs-
Appellants.

Josh A. Marks (Heidi C. Potter, with him on the brief), Berg Hill Greenleaf &
Ruscitti, LLP, Boulder, Colorado, for Defendant-Appellee.

---

Before **KELLY, BALDOCK,** and **BRISCOE**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

Plaintiffs-Appellants Monty Nichols and Clara L. Nichols appeal the district court's order granting summary judgment to defendant-appellee Board of County Commissioners for the County of La Plata, Colorado (the "BOCC"). The Nichols argue that the BOCC violated their substantive and procedural due process rights by not approving certain modifications to a Special Use Permit that the BOCC had granted them under the local zoning ordinances. Specifically, the Nichols contend that a settlement between the BOCC and a third party has preclusive effect in the instant case under the doctrine of collateral estoppel and provides them with a property interest in the approval of their requested modifications. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

I.

The facts are not in dispute. The Nichols own the Bueno Tiempo Ranch, located in La Plata County, Colorado, and governed by the Code of La Plata County (the "Code"). As part of the Animas Valley Land Use Plan, the Code designates certain land in La Plata County as falling into one or more Districts. The Bueno Tiempo Ranch falls within the River Corridor District and the Five-Acre Minimum Single-Family Residential District, as defined in §§ 106-131 to -134, and §§ 106-191 to -193, respectively, of the Code. The Code does not permit commercial mining operations—either as of right or by Special Use Permit—within these districts.

In 2002, the Nichols' agent, Tim McCarthy, approached the Planning

2

Director of La Plata County, Joe Crain, about constructing a pond or lake on the Bueno Tiempo Ranch and selling the topsoil removed during construction. Mr. Crain advised Mr. McCarthy that although the construction of the pond was "an allowed use in the zone district[,] *any* sale of topsoil is considered a commercial use of the land and is *not* allowed." Letter from Joe Crain, ROA, Vol. I, at 0174. Mr. Crain also stated, however, that because the Code permits "low-intensity, tourist-oriented recreational uses" by Special Use Permit, see Code, §§ 106-134, 106-193, "the temporary sale of topsoil in preparation of expanded recreational use of the property could be considered a temporary, accessory use and regulated through the Special Use Permit if approved by the Board of County Commissioners." Letter from Joe Crain, ROA, Vol. I, at 0174.

A Special Use Permit is discretionary, and the Planning Commission and BOCC may only approve a Special Use Permit upon "determin[ing] through careful site plan and compatibility evaluation that the proposal will not be a detriment to the character of the Animas Valley." Code, § 106-112(b)(7). The Code further provides that Special Use Permits "shall only be approved through the class II land use permit procedures." Id. § 106-112(d). Section 82-4(b)(3) of the Code requires an applicant for a class II permit to comply with an array of standards addressing such issues as air quality, buffering, erosion control, irrigation, preservation of vegetation, parking, wetlands preservation, and pollution. See id. §§ 82-4(b)(3), 82-126 to -191.

3

Following Mr. Crain's advice, the Nichols applied for a Special Use Permit, which the BOCC approved at a hearing on June 3, 2002. The Special Use Permit required the completion of construction within three years, prohibited retail sale of material directly from the site, and prohibited any screening or processing of material on site. Approximately one year later, the Nichols requested a modification of their Special Use Permit to lift the restrictions on screening and stockpiling. The BOCC held a public hearing on September 15, 2003, at which the Nichols presented their request. Ultimately, the BOCC followed the Planning Commission's recommendations and granted only one modification to the Special Use Permit: allowing materials to remain on site overnight to drain prior to transport. The BOCC did not change the duration of the project or lift the prohibition on on-site screening. The Nichols did not appeal the BOCC's decision.

On February 4, 2004, the Nichols again sought a modification of their Special Use Permit. The Nichols' requested modifications were similar to those that the BOCC had previously denied, but this time, the Nichols based their request on a settlement between La Plata County and George VanDenBerg. Mr. VanDenBerg, like the Nichols, owned property within the River Corridor and Five-Acre Minimum Single-Family Residential Districts. Like the Nichols, Mr. VanDenBerg had attempted to construct wetlands on his property while selling the topsoil removed during construction. In a brief letter to Mr. VanDenBerg,

4

dated July 9, 1998, Mr. Crain had approved this limited sale of topsoil as part of the construction of the wetlands. Eventually, however, the County and Mr. VanDenBerg began disputing the scope of his topsoil operation, and in September 2003, the County sued Mr. VanDenBerg, alleging that his topsoil operation violated the Code. After mediation, the County and Mr. VanDenBerg entered into a settlement agreement (the "VanDenBerg Settlement"). The VanDenBerg Settlement permitted limited screening, stockpiling, and retail operations on Mr. VanDenBerg's property, and permitted him to continue construction of the wetlands until December 31, 2007. The County also agreed to draft a letter to the Colorado Department of Transportation, opining that the activities on Mr. VanDenBerg's property were not of a commercial nature.

The Nichols' modification request of February 4, 2004, intentionally tracked the language of the VanDenBerg Settlement. Nevertheless, the Planning Commission recommended denying the Nichols' request because (1) it would have resulted in a prohibited commercial topsoil business, (2) nothing had changed to warrant revision since original approval, and (3) the VanDenBerg case had nothing to do with the Bueno Tiempo land use approval. The BOCC then took the Nichols' request off the agenda for the meeting on March 15, 2004, because the BOCC viewed it as a reiteration of the Nichols' previous requests and no new information warranted reconsideration. Again, the Nichols did not appeal this decision.

5

On March 9, 2005, the Nichols brought suit against the BOCC in the U.S. District Court for the District of Colorado. Pursuant to 42 U.S.C. § 1983, the Nichols alleged that the BOCC violated their substantive due process, procedural due process, and equal protection rights. On October 31, 2005, the BOCC moved for summary judgment. The Nichols filed a response on December 8, 2005, and in that response, they voluntarily withdrew their equal protection claim, as well as their substantive and procedural due process claims as they related to the Nichols' 2003 request to modify their Special Use Permit. Their only remaining claims were alleged violations of their substantive and procedural due process rights relating to the February 4, 2004, request to modify their Special Use Permit.

The district court granted the BOCC's motion for summary judgment. It rejected the Nichols' substantive and procedural due process claims, holding that the Nichols did not have a property interest entitling them to protection under the Due Process Clause of the Fourteenth Amendment. The district court also rejected the Nichols' argument that the doctrine of collateral estoppel prevented the County from relitigating the effect of the criteria listed in the VanDenBerg Settlement.

II.

This court's review of an order granting summary judgment "is de novo, applying the same legal standard employed by the district court." Wolfe v. Barnhart, 446 F.3d 1096, 1100 (10th Cir. 2006). Under Fed. R. Civ. P. 56(c),

6

summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Sundance Assocs., Inc. v. Reno, 139 F.3d 804, 807 (10th Cir. 1998) (citations and internal quotation marks omitted). Where, as here, "there is no genuine issue of material fact in dispute, then we next determine if the substantive law was correctly applied by the district court." Id. (citations and internal quotation marks omitted). Two issues are the source of controversy on appeal: (1) whether the VanDenBerg Settlement has preclusive effect under the doctrine of collateral estoppel, and (2) whether the BOCC violated the Nichols' substantive and/or procedural due process rights. We address each in turn.

*Collateral estoppel*

The district court correctly concluded that collateral estoppel does not apply here. In determining the preclusive effect of a state court judgment, the full faith and credit statute, 28 U.S.C. § 1738, "directs a federal court to refer to the preclusion law of the State in which judgment was rendered." Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985). This statute "embodies concerns of comity and federalism that allow the States to determine,

7

subject to the requirements of the statute and the Due Process Clause, the preclusive effect of judgments in their own courts." Id. Here, a county court judge in La Plata County, Colorado, adopted the VanDenBerg Settlement and entered it as a consent decree, so Colorado law governs its preclusive effect.

Under Colorado law, "[t]he doctrine of collateral estoppel precludes relitigation of an issue that was already litigated and decided in a previous proceeding." Grynberg v. Ark. Okla. Gas Corp., 116 P.3d 1260, 1263 (Colo. Ct. App. 2005). Collateral estoppel, also known as issue preclusion, "is intended to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Bebo Constr. Co. v. Mattox & O'Brien, P.C., 990 P.2d 78, 84 (Colo. 1999) (citations and internal quotation marks omitted). It bars relitigation of an issue if:

> (1) The issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) The party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding; (3) There was a final judgment on the merits in the prior proceeding; (4) The party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding.

Id. at 84-85. The party seeking collateral estoppel has the burden of establishing each of these elements. Id. at 85.

The district court and the BOCC are correct that the VanDenBerg Settlement does not meet the first element of the collateral estoppel test. "To

8

satisfy the first element of collateral estoppel, the issue to be precluded must be identical to an issue actually litigated and necessarily adjudicated in the prior proceeding." Grynberg, 116 P.3d at 1263. "For an issue to be actually litigated, the parties must have raised the issue in the prior action." Bebo Constr. Co., 990 P.2d at 85. A party must have asserted it "by appropriate pleading, . . . through a claim or cause of action against the other [party]." Id. Furthermore, "the issue must [have been] submitted for determination and then actually determined by the adjudicatory body." Id. (emphasis added).

As the district court noted, the Colorado courts have not yet decided whether a settlement agreement and consent decree are "actually determined by the adjudicatory body" for the purposes of collateral estoppel. But cf. Bennett Coll. v. United Bank of Denver, 799 P.2d 364, 368 (Colo. 1990) ("Under certain circumstances a stipulation between parties to central questions of fact and law or a stipulation to questions of fact may render a judgment not 'final' as to those questions, and in a subsequent proceeding collateral estoppel should not prevent the litigation of those questions unless the parties in the original lawsuit intended the questions to be settled as to future actions."). The Colorado Supreme Court, though, relies on the Restatement (Second) of Judgments § 27 (1982) when formulating collateral estoppel principles. See, e.g., Bebo Constr. Co., 990 P.2d at 85-86 & n.3; Michaelson v. Michaelson, 884 P.2d 695, 701 & n.7 (Colo. 1994); Bennett Coll., 799 P.2d at 368; see also In re McMahon, 356 B.R. 286, 295-96

9

(Bankr. N.D. Ga. 2006) (applying Colorado law and holding that the Colorado Supreme Court would apply § 27 in determining the preclusive effect of a default judgment). The Restatement clarifies that,

> [i]n the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore, the rule of this Section does not apply with respect to any issue in a subsequent action. The judgment may be conclusive, however, with respect to one or more issues, if the parties have entered an agreement manifesting such an intention.

Restatement (Second) of Judgments § 27 cmt. e (1982).[1]

Other authorities similarly decline to afford preclusive effect to settlements and consent decrees under the doctrine of collateral estoppel. See, e.g., Hughes v. Santa Fe Int'l Corp., 847 F.2d 239, 241 (5th Cir. 1988); 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4443 (2d ed. 2002); cf. Ross v. Old Republic Ins. Co., 134 P.3d 505, 511 (Colo. Ct. App. 2006) ("A consent judgment is not a judicial determination of any litigated right, and it is not the judgment of the court, except in the sense that the court allows it to go upon the record and have the force and effect of a judgment."). The Restatement explains the rationale for such a rule:

> The interests of conserving judicial resources, of maintaining consistency, and of avoiding oppression or harassment of the adverse party are less compelling when the issue on which preclusion is sought has not actually been litigated before. And if preclusive effect

---

[1] On at least two occasions, the Colorado Supreme Court has cited *comment e* as support for its collateral estoppel jurisprudence. See Bebo Constr. Co., 990 P.2d at 86; Bennett Coll., 799 P.2d at 368.

10

were given to issues not litigated, the result might serve to discourage compromise, to decrease the likelihood that the issues in an action would be narrowed by stipulation, and thus to intensify litigation.

Restatement (Second) of Judgments § 27 cmt. e (1982). Therefore, under the "actually litigated and necessarily adjudicated" element of Colorado's collateral estoppel test, the VanDenBerg Settlement does not have preclusive effect on any of the issues in controversy in the instant litigation.

The Nichols' reliance on Satsky v. Paramount Communications, Inc., 7 F.3d 1464, 1468 (10th Cir. 1993), is misplaced. The court in Satsky addressed the effect of a consent decree under the doctrine of res judicata, also known as claim preclusion. Id. The effect of a consent decree differs in the collateral estoppel, or issue preclusion, context: "In most circumstances, it is recognized that consent agreements ordinarily are intended to preclude any further litigation on the claim presented but are not intended to preclude further litigation on any of the issues presented. Thus consent judgments ordinarily support claim preclusion but not issue preclusion." 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4443 (2d ed. 2002); see also Arizona v. California, 530 U.S. 392, 414 (2000) (holding that, under federal law, settlements have claim-preclusive effect between the parties to the settlement, "[b]ut settlements ordinarily occasion no issue preclusion . . . unless it is clear . . . that the parties intend their agreement to have such an effect").

11

*Due process*

The district court correctly held that the Nichols did not have a constitutionally protected property right in the approval of their February 4, 2004, request to modify their Special Use Permit. The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Under the Due Process Clause, "[p]rocedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision." Hyde Park Co. v. Santa Fe City Council, 226 F.3d 1207, 1210 (10th Cir. 2000).

To prevail on either a procedural or substantive due process claim under 42 U.S.C. § 1983, "a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectible property interest." Id.[2] In Board of Regents v. Roth, 408 U.S. 564, 577 (1972), the Supreme Court defined the property interests protected

---

[2] The Supreme Court has clarified that courts must address this issue—i.e. whether the plaintiff has a protected property interest at all—before addressing whether the government's substantive decision or procedures comport with due process. See Fed. Lands Legal Consortium v. United States, 195 F.3d 1190, 1195 (10th Cir. 1999) (quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 59 (1999)).

by the Due Process Clause:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.
>
> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

We have explained further that "constitutionally protected property interests are created and defined by statute, ordinance, contract, implied contract and rules and understandings developed by state officials." Hulen v. Yates, 322 F.3d 1229, 1240 (10th Cir. 2003).

In the municipal land use context, moreover, "the entitlement analysis presents a question of law and focuses on 'whether there is discretion in the defendants to deny a zoning or other application filed by the plaintiffs.'" Hyde Park Co., 226 F.3d at 1210 (quoting Norton v. Vill. of Corrales, 103 F.3d 928, 931-32 (10th Cir. 1996)). "A property interest exists if discretion is limited by the procedures in question, that is, whether the procedures, if followed, require a particular outcome." Crown Point I, LLC v. Intermountain Rural Elec. Ass'n, 319 F.3d 1211, 1217 (10th Cir. 2003) (citing Hyde Park Co., 226 F.3d at 1210). On

13

the other hand, "where the governing body retains discretion and the outcome of the proceeding is not determined by the particular procedure at issue, no property interest is implicated."  Id. (citing Hyde Park Co., 226 F.3d at 1210); see also Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, 927 F.2d 1111, 1116-17 (10th Cir. 1991) (holding that, where state law required the zoning board to consider six enumerated factors, those factors were "insufficient to confer upon the applicant a legitimate claim of entitlement").

The Nichols did not have a constitutionally protected property right in the approval of their February 4, 2004, request to modify their Special Use Permit. The Nichols do not dispute that the Code provided the BOCC with discretion in approving or rejecting their Special Use Permit—and any modifications to that Special Use Permit.  The Nichols contend, however, that the BOCC's discretion "dissolved" following the entry of the VanDenBerg Settlement.

The Nichols provide no authority supporting their claim that the VanDenBerg Settlement limited the BOCC's discretion in such a way as to give them a constitutionally protected property right.  A search of land-use and zoning due process cases has likewise revealed no legal support for this proposition.  The few cases that are even remotely analogous provide support for the BOCC, rather than the Nichols.  See, e.g., Crowley v. Courville, 76 F.3d 47, 52 (2d Cir. 1996) (holding that an applicant had no property interest in the zoning board's issuance of a new parking variance, where the applicant intended to change the property's

14

use from office to retail); <u>Triomphe Investors v. City of Northwood</u>, 49 F.3d 198, 203 (6th Cir. 1995) (holding that, where a special use permit had been issued previously on the same property, the owner did not have a property interest in the issuance of another special use permit). The VanDenBerg Settlement was an agreement between the BOCC and Mr. VanDenBerg. The Nichols were neither parties nor third-party beneficiaries to it. Further, there is no evidence that the BOCC intended the terms and conditions of the VanDenBerg Settlement to apply to other Special Use Permits, or to result in a de facto amendment of the otherwise discretionary criteria contained in the Code. Cf. <u>Hyde Park Co.</u>, 226 F.3d at 1212-1213 ("Because the ordinances <u>as written</u> contain no standards governing the City Council's exercise of discretion, the ordinances simply do not impose 'significant substantive restrictions' on the City Council's power of review." (quoting <u>Jacobs</u>, 927 F.2d at 1117 n.4) (emphasis added)). The fact that the BOCC entered into a settlement agreement with Mr. VanDenBerg, under the specific facts and circumstances of that case, does not transform the terms and conditions of the settlement into a constraint on the BOCC's discretion in other cases. See <u>Fed. Lands Legal Consortium v. United States</u>, 195 F.3d 1190, 1200 (10th Cir. 1999) ("Courts have adopted this rule, because '[a] constitutional entitlement cannot be created—as if by estoppel—merely because a wholly and expressly discretionary state privilege has been granted generously in the past.'" (quoting <u>Conn. Bd. of Pardons v. Dumschat</u>, 452 U.S. 458, 465 (1981)) (alteration

15

in original) (emphasis omitted)).

We note that the Nichols have bypassed the usual avenue for parties whose zoning requests have been denied. The Nichols could have appealed the BOCC's decision, contending the BOCC had abused its discretion. See Colo. R. Civ. P. 106(a)(4)(I)[3]; Sundheim v. Bd. of County Comm'rs, 904 P.2d 1337, 1345 (Colo. Ct. App. 1995), aff'd, 926 P.2d 545 (Colo. 1996). The Nichols chose not to pursue this avenue of relief after the BOCC denied either of their requests to modify the Special Use Permit. "Federal courts should be reluctant to interfere in zoning disputes which are local concerns." Norton, 103 F.3d at 933; see also Hyde Park Co., 226 F.3d at 1212 ("Without clearly defined limitations on the City Council's exercise of discretion to assist us in our construction of local law, we hesitate to infer such limits and involve this federal court in a land use regulation dispute which is purely a matter of local concern.").

---

[3] Colo. R. Civ. P. 106(a) provides that "relief may be obtained in the district court by appropriate action":

(4) Where any governmental body or officer or any lower judicial body exercising judicial or quasi-judicial functions has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy otherwise provided by law:

(I) Review shall be limited to a determination of whether the body or officer has exceeded its jurisdiction or abused its discretion, based on the evidence in the record before the defendant body or officer.

Rule 106(b) provides for a thirty-day statute of limitations for such actions.

Without a constitutionally protected property right in the approval of their February 4, 2004, request to modify their Special Use Permit, the Nichols' substantive and procedural due process claims necessarily fail.

AFFIRMED.