In re John C. PUTVIN, also known as John d'Anaconia Galt, doing business as Pacific Rim Mortgage, Inc., Debtor.

Virginia Hill, Plaintiff—Appellee,

v.

John C. Putvin, Defendant—Appellant.

BAP No. UT–05–030.
Bankruptcy No. 03B–41098.
Adversary No. 04PB–2442.

United States Bankruptcy Appellate Panel for the Tenth Circuit.

Nov. 7, 2005.

Submitted on the briefs: *

John C. Putvin, pro se.

Clark R. Nielsen and Scott M. Ellsworth of Smith Hartvigsen, PLLC, Salt Lake City, Utah; Donn S. Redd, Layton, Utah; and Noel S. Hyde, South Ogden, Utah, for Defendant—Appellee.

Before BOHANON, MICHAEL, and McNIFF, Bankruptcy Judges.

## OPINION

BOHANON, Bankruptcy Judge.

Appellant/Defendant/Debtor, John C. Putvin, appeals an order of the United States Bankruptcy Court for the District of Utah that granted summary judgment in favor of Appellee/Plaintiff Virginia Hill on the issue of whether a debt established by a state court judgment was nondischargeable under 11 U.S.C. § 523(a)(4).[1] Putvin argues that the bankruptcy court erred when it determined that it was barred by the *Rooker–Feldman* doctrine from reversing the effects of a state court judgment and collaterally estopped from revisiting factual issues found by the state court. We conclude that the bankruptcy court correctly applied both the *Rooker–Feldman* doctrine and the collateral estoppel doctrine and so affirm.

## I. *Background*

The debt at issue arises from a Utah state court judgment entitled "Amended Findings of Fact and Conclusions of Law" entered on October 14, 2003 ("Utah judgment").[2] In the state court proceeding, Putvin appeared pro se. Pursuant to the Utah judgment, Putvin, one of several state court defendants, was found liable for the following acts:

A. Civil Conspiracy to conceal and steal Hill's money

B. Conversion of Hill's money;

C. Money Laundering of Hill's money;

D. Fraudulent Misrepresentation to the detriment of Plaintiff Virginia Hill.[3]

Based on these findings, the state court determined that Putvin was jointly and severally liable to Hill in the amount of

---

* The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

1. Unless otherwise indicated, all future statutory references will be to Title 11 of the United States Code.

2. The state case was tried to the bench between October 28 and December 6, 2002. A Memorandum Decision was entered on March 4, 2004. The findings in that decision were subsequently modified by the Amended Findings of Fact and Conclusions of Law. The modifications did not alter any of the original findings with respect to liability; they merely changed the computation of interest.

3. Amended Finding of Facts and Conclusions of Law at 17, *in* Appellant's Appendix at 17.

$1.45 million plus 10 percent interest ("Debt").

On December 12, 2003, Putvin filed a petition under Chapter 7 of the Bankruptcy Code. On March 15, 2004, Hill timely filed an adversary proceeding, arguing that the Debt was nondischargeable under §§ 523(a)(2)(A), (a)(4), and (a)(6). Subsequently, Hill filed a summary judgment motion on the grounds that the Utah judgment had established all the factual elements of nondischargeability under §§ 523(a)(2)(A), (a)(4), and (a)(6) and therefore, there were no disputed issues of material fact. Putvin contested the summary judgment motion, arguing that the state court findings should be accorded no weight as the proceedings had been unfair and unconstitutional.

The bankruptcy court entered a Memorandum Decision granting Hill's summary judgment motion in part ("Memorandum Decision") on April 7, 2005. In its Memorandum Decision, the bankruptcy court found that it was collaterally estopped from revisiting the factual findings of the state court judgment, and it was barred by the *Rooker–Feldman* doctrine from reviewing or reversing any state court findings. It concluded that while the factual elements of § 523(a)(2)(A) and (a)(6) had not been established by the Utah judgment, the factual elements of § 523(a)(4) had been established, and as a matter of law the Debt was nondischargeable under § 523(a)(4).

This appeal timely followed. We have jurisdiction over this appeal. The bankruptcy court's judgment is a final order subject to appeal under 28 U.S.C. § 158(a)(1).[4] The parties have consented to this Court's jurisdiction because they have not elected to have the appeal heard by the United States District Court for the District of Utah.[5]

## II. *Discussion*

Under Fed.R.Civ.P. 56(c), incorporated into bankruptcy practice by Fed. R. Bankr.P. 7056, summary judgment is appropriate when after consideration of the record, the court determines that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[6] A controverted fact that will preclude summary judgment must be material to the summary judgment motion.[7] The movant has the burden of establishing entitlement to summary judgment. We review the record *de novo* in the light most favorable to the opposing party.[8]

On appeal, Putvin contends that the bankruptcy court erred when it applied the *Rooker–Feldman* doctrine and the collateral estoppel doctrine.[9] Putvin argues

---

4. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996).

5. 28 U.S.C. § 158(b)-(c); Fed. R. Bankr.P. 8001(e); 10th Cir. BAP L.R. 8001–1.

6. Fed.R.Civ.P. 56(c).

7. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

8. *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir.1995); *Spears v. St. Paul*

*Ins. Co. (In re Ben Kennedy & Assocs., Inc.)*, 40 F.3d 318, 319 (10th Cir.1994).

9. Putvin offers two additional grounds for appeal.

First, Putvin argues that we should reverse the bankruptcy court's Order because he filed a motion for summary judgment prior to the one at issue and the bankruptcy judge failed to consider it. The filing that Putvin claims was a motion for summary judgment is entitled "Motion for Contempt for Enforcement of Automatic Stay of 3rd District State and Motion for Sanctions (Summary Judgment)." The bankruptcy court treated this filing as an

that summary judgment was inappropriate because the bankruptcy court relied on state court factual findings in determining the Debt was nondischargeable and did not make its own factual findings regarding any debt Putvin may or may not have owed Hill. We will address each argument in turn.

■ First, Putvin argues that the *Rooker–Feldman* doctrine is inapplicable to this case. The *Rooker–Feldman* doctrine bars "a party losing in state court ... from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." [10] When determining whether the *Rooker–Feldman* doctrine applies, " '[t]he fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment.' " [11]

Recently, in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*,[12] the Supreme Court clarified the scope of the *Rooker–Feldman* doctrine.

In *Exxon* the plaintiff filed first a federal case and then a state case. The state court case was based on a contract dispute. The subject matter jurisdiction of the federal case was based on 28 U.S.C. § 1330, which allows district courts to adjudicate actions against foreign states. The defendant moved to dismiss the federal suit under the Foreign Sovereign Immunities Act of 1976. The federal district court denied the defendant's motion to dismiss, and the defendant took an interlocutory appeal to the Third Circuit. Subsequently, the state court trial came to judgment and was decided. On its own motion, the Third Circuit raised the issue of whether it had subject matter jurisdiction based on the *Rooker–Feldman* doctrine. Ultimately, the Circuit Court dismissed the suit, concluding that the *Rooker–Feldman* doctrine bars further proceedings on claims when a state court judgment precedes the federal judgment on the same claims.[13] The Supreme Court granted certiorari and reversed.

The Supreme Court held that the *Rooker–Feldman* doctrine did not bar a federal court from hearing cases over which it had subject matter jurisdiction after an entry of judgment in the state court on the same claim. The Court held:

> The *Rooker–Feldman* doctrine ... is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of

answer to the Plaintiff's complaint and not as a motion for summary judgment. *See* Memorandum Decision at 2 n. 2, *in* Appellant's Appendix at 37. Regardless of what the bankruptcy judge called Putvin's filing, the bankruptcy judge considered the substantive arguments. Therefore, we decline to address the argument.

Second, Putvin argues that he made a Rule 60(b) motion that was mistakenly filed and ruled on in the main case and not in the adversary case as he intended. This issue is not properly before us, and we will not address it.

**10.** *Johnson v. De Grandy*, 512 U.S. 997, 1005–06, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994).

**11.** *State of Mo. ex rel. Nixon v. Audley (In re Audley)*, 275 B.R. 383, 390 (10th Cir. BAP 2002) (quoting *Collins v. Kansas*, 174 F.Supp.2d 1195, 1198 (D.Kan.2001) (further quotation omitted)).

**12.** —— U.S. ——, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005).

**13.** *Id.* at 1525.

those judgments. *Rooker–Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.[14] The Court further directed: "Disposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law."[15]

Although his argument is somewhat unclear, Putvin appears to argue that the *Rooker–Feldman* doctrine is inapplicable to this case because like *Exxon,* there is concurrent state and federal jurisdiction based on Putvin's federal claims.[16] Putvin contends that he has the two following claims under constitutional and federal law: (1) the state court judge violated his constitutional rights by exhibiting religious bias against Putvin; and (2) the state court violated his right to a fair trial under the American with Disabilities Act. According to Putvin, his federal law claims put the state court factual findings in dispute so that the *Rooker–Feldman* doctrine does not apply.

Putvin misunderstands the *Exxon* holding.

*Exxon* did not hold that a federal court can ignore a state court's factual findings. *Exxon* held that a federal court can have concurrent jurisdiction with a state court if there are independent federal claims.

However, with respect to the federal claims, the state court's factual findings still have preclusive effect as " 'state law determines whether the defendant prevails under principles of preclusion.' "[17]

Although Putvin may have valid constitutional or federal law claims, these claims could not have been brought in the bankruptcy court to overturn or place in dispute the factual findings of the state court. Under the *Rooker–Feldman* doctrine, a federal court cannot overturn state court factual findings. Such attacks on state court factual findings may only be raised on appeal in the state court or to the Supreme Court.[18]

The bankruptcy court properly concluded that it was barred by the *Rooker–Feldman* doctrine from hearing Putvin's arguments regarding alleged inaccuracies in the state court factual findings. The bankruptcy court correctly applied the *Rooker–Feldman* doctrine in determining that the state court factual findings precluded a redetermination of any previously established relevant factual issues.

■ Second, Putvin argues that the bankruptcy court erred in applying the collateral estoppel doctrine. Collateral estoppel or issue preclusion is a doctrine that prohibits the relitigation between the same parties of issues of ultimate fact that have been "determined by a valid and final judgment."[19] The purpose of the collater-

14. *Id.* at 1521–22.

15. *Id.* at 1527.

16. Putvin also argues that application of the *Rooker–Feldman* doctrine was inappropriate as the Utah judgment was not final. We address the finality of the judgment *infra.*

17. *Exxon,* 125 S.Ct. at 1527 (quoting *GASH Assocs. v. Village of Rosemont,* 995 F.2d 726, 728 (7th Cir.1993) (further citation omitted)).

18. *Id.* at 1526 (citing *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 644 n. 3,

122 S.Ct. 1753, 152 L.Ed.2d 871 (2002)). As the Supreme Court observed, " '[t]he *Rooker–Feldman* doctrine merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to this Court, see § 1257(a).' " *Id.* (quoting *Verizon Md.,* 535 U.S. at 644 n. 3, 122 S.Ct. 1753).

19. *Phelps v. Hamilton,* 122 F.3d 1309, 1318 (10th Cir.1997) (quotation omitted).

al estoppel doctrine is to protect parties from multiple lawsuits, prevent the possibility of inconsistent decisions, and conserve judicial resources.[20]

■ In bankruptcy court the collateral estoppel doctrine may apply in determining the dischargeability of a debt.[21] When a federal court reviews the preclusive effect of a state court judgment under the collateral estoppel doctrine, it is guided by the mandates of the Full Faith and Credit Act, 28 U.S.C. § 1738,[22] which codifies the Full Faith and Credit Clause of the Constitution, Art. IV, § 1.[23] The Full Faith and Credit Act directs a federal court to look to the preclusion law of the state in which the judgment was rendered.[24] It requires the federal court to " 'give the same preclusive effect to a state-court judgment as another court of that State would give.' "[25] While ultimately, a bankruptcy judge determines whether a debt is nondischargeable under § 523, a state court judgment may preclude the relitigation of settled facts under the collateral estoppel doctrine.[26]

■ Under Utah law, a party may assert the collateral estoppel doctrine when the following elements are met:

(1) the issue decided in a prior adjudication must be identical with the one presented in the action in question;

(2) there must be a final judgment on the merits;

(3) the party against whom the plea is asserted must be a party or in privity with a party to the prior adjudication; and

(4) the issue in the first case must have been competently, fully, and fairly litigated.[27]

Putvin argues that elements two and four of the Utah collateral estoppel doctrine were not met.

■ First Putvin argues that element two of the Utah collateral estoppel doctrine was not met as there was no final judgment on the merits in the state court case because there were post judgment motions pending when Putvin filed his Chapter 7 case. This argument fails. In Utah, a judgment is final for issue preclu-

---

**20.** *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).

**21.** *Grogan v. Garner,* 498 U.S. 279, 284–85 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *SIL–FLO, Inc. v. SFHC, Inc.,* 917 F.2d 1507, 1520 (10th Cir.1990) ("Under collateral estoppel, 'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.' ") (quoting *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)).

**22.** The Full Faith and Credit Act provides in pertinent part: "The ... judicial proceedings of any court of any such State ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State ...." 28 U.S.C. § 1738.

**23.** *Phelps,* 122 F.3d at 1318.

**24.** *Marrese v. Am. Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) (holding that in cases exclusively within federal jurisdiction, state law determines the preclusive effect of a prior state court judgment unless an exception to the Full Faith and Credit Act applies).

**25.** *Exxon,* 125 S.Ct. at 1527 (quoting *Parsons Steel, Inc. v. First Ala. Bank,* 474 U.S. 518, 523, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986) (further citations omitted)).

**26.** *See Klemens v. Wallace (In re Wallace),* 840 F.2d 762, 765 (10th Cir.1988).

**27.** *Richardson ex rel. Richardson v. Navistar Intern. Transp. Corp.,* 231 F.3d 740, 743 (10th Cir.2000) (applying Utah law) (further citations omitted).

sion purposes until it is reversed on appeal.[28] Here, the state court judgment has not been reversed on appeal. In fact, there is no indication that it has been appealed. Any post judgment motions are irrelevant, and the factual findings in the judgment are final under the collateral estoppel doctrine.

Next, Putvin argues that element four of the collateral estoppel doctrine was not met as he allegedly did not have a full and fair opportunity to litigate his state court case. Whether a party had a full and fair opportunity to litigate may be examined by questioning "whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties."[29]

Putvin contends that his state court trial was rife with procedural irregularities and therefore, the bankruptcy court erred when it gave the state court proceedings collateral estoppel effect. Specifically, Putvin argues that the trial was unfair for the following reasons: (1) he did not have access to medical services during the court proceedings and the lack of medical assistance affected his ability to represent himself; (2) he was unprepared to defend himself as his legal counsel withdrew on the morning of the trial and the judge did not grant him time to obtain new legal counsel; (3) the length of time for trial was inadequate; (4) there was a conflict of interest between the counsel of certain of the defendants and Putvin; and (5) there were documents missing from the court file.[30]

The bankruptcy court found that Putvin had an incentive to fully defend himself and that there was no indication that the parties' relationships in the state court case limited the effectiveness of the state court action. The bankruptcy court reviewed the alleged procedural limitations and determined that they did not rise to the level of significant limitations that would bar the collateral estoppel doctrine. The bankruptcy court concluded that Putvin had a full and fair opportunity to litigate his state court case. We agree.

Essentially all of Putvin's arguments center on his own competence to conduct his state court trial. His most serious claim is that his attorney unexpectedly withdrew on the morning of his trial and he was forced to defend himself. This argument is contradicted by the record, which indicates that Putvin's counsel withdrew with Putvin's consent. Furthermore, the letter Putvin's former legal counsel faxed to the court for the purposes of withdrawing is dated five days before the state court trial began and references a motion to withdraw that was filed earlier.[31]

---

**28.** *Atiya v. Salt Lake County,* 988 F.2d 1013, 1020 (10th Cir.1993) (citing *Berry v. Berry,* 738 P.2d 246, 249 (Utah App.1987) (further citations omitted)).

**29.** *SIL–FLO,* 917 F.2d at 1521.

**30.** Putvin also offers three other points to support this argument. The first argument contends that the Utah judgment was incorrect because of bias and misapplication and or misunderstanding of the evidence. The second argument contends that the state court did not follow its own procedures in entering a judgment. The third argument concerns events that occurred after the judgment was entered. All three of these arguments are irrelevant with respect to the issue of whether Putvin had a full and fair opportunity to competently litigate the state court trial at the time the trial occurred, and we decline to consider them.

**31.** *See* Letter from Ronald C. Barker dated October 23, 2002, *in* Appellant's Appendix at 172.

■ Similarly, Putvin's other arguments that his alleged legal incompetence prevented him from having a full and fair opportunity to litigate his state court claims fail. In Utah, pro se litigants are held to the same standards as qualified attorneys.[32] Although Putvin may now be unhappy with the Utah judgment, he had the incentive and the opportunity to fully defend himself in the state court action.

■ Finally, Putvin argues that the bankruptcy court misapplied the state court factual findings in concluding that the Debt was nondischargeable under § 523(a)(4). This section provides that a Chapter 7 debtor is not discharged from any debt resulting from "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny ...."[33] Under § 523(a)(4) embezzlement will have occurred when there is a " 'fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come, and it requires fraud in fact, involving moral turpitude or intentional wrong, rather than implied or constructive fraud.' "[34] A creditor must establish by a preponderance of the evidence that the debt is nondischargeable.[35]

■ The bankruptcy court found that the state court had made the following factual findings: (1) Putvin had been entrusted with Hill's money; (2) Putvin had fraudulently appropriated the money because he used the money for purposes other than those for which it had been placed in his control or possession; (3) Putvin exercised unchecked control over the money; (4) Putvin had intended to convert the cash. Based on these state court findings, the bankruptcy court found that all the elements of § 523(a)(4) had been established.

Putvin argues that the factual findings in the state court case cannot have preclusive effect in the bankruptcy court because they do not specifically implicate him in any wrongdoing. He grounds this argument on his observation that with respect to the conspiracy charge certain of the findings refer to the collective "defendants" and not to Putvin individually. He argues that "any conclusion that Putvin's debt should not be discharged is based upon unfounded extrapolations from these illegitimate findings."[36] This argument is specious.

The Utah judgment states that "John C. Putvin is jointly and severally liable" on the various counts. In its detailed findings of fact, the state court specifically found that Putvin was liable for fraudulent misrepresentation, conversion, and conspiracy to defraud. While there are findings in the Utah judgment that refer to the defendants collectively, Putvin is not absolved of liability because he is not referred to specifically. More importantly, the Utah judgment specifically details acts done by Putvin which resulted in the finding of Putvin's liability. We find no error in the bankruptcy court's application of the law under § 523(a)(4) to the state court factual findings.

---

**32.** *Nelson v. Jacobsen,* 669 P.2d 1207, 1213 (Utah 1983).

**33.** 11 U.S.C. § 523(a)(4).

**34.** *Driggs v. Black (In re Black),* 787 F.2d 503, 507 (10th Cir.1986) (quoting *United States Life Title Ins. Co. v. Dohm (In re Dohm),* 19 B.R. 134, 138 (N.D.Ill.1982) (further quota-tion omitted)), *overruled on other grounds by Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

**35.** *Grogan,* 498 U.S. at 291, 111 S.Ct. 654.

**36.** Appellant's Reply Memorandum at 8.

### III. *Conclusion*

For the reasons set forth above, the bankruptcy court's judgment is AF-FIRMED.