**FILED**

**U.S. Bankruptcy Appellate Panel**
**of the Tenth Circuit**

**August 5, 2015**

**Blaine F. Bates**
**Clerk**

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE TENTH CIRCUIT

| | |
|---|---|
| IN RE GARY WOODROW FLANDERS, ind. and as officer, director, shareholder Canyon Quarry Co., Farmer & Merchants Bank, Great Northern Land Co., MetroBank, N.A., <br><br> Debtor. | BAP No.     CO-14-055 |
| GARY WOODROW FLANDERS, <br><br>         Plaintiff – Appellant, <br><br>    v. <br><br> EVELYN JANE LAWRENCE, DANIEL A. WEST, Attorney, MOYE WHITE LLP, and JAMES T. BURGHARDT, <br><br>         Defendants – Appellees. | Bankr. No.   98-24779 <br> Adv. No.     13-01456 <br>     Chapter    7 <br><br> OPINION* |

Appeal from the United States Bankruptcy Court
for the District of Colorado

Submitted on the briefs:[1]

Before MICHAEL, KARLIN, and HALL, Bankruptcy Judges.

_____

\*      This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion.   10th Cir. BAP L.R. 8026-6.

[1]      The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not significantly aid in the determination of this appeal. *See* Fed. R. Bankr. P. 8019(b)(3).  The case is therefore submitted without oral argument.

MICHAEL, Bankruptcy Judge.

*"If at first you don't succeed, try, try, try again."*[2]

There are many great American success stories built upon unflinching stubborn determination in the face of incredible odds. Very few of them, however, can be found in the annals of litigation history. This case will not alter the landscape. The debtor in this now 17-year-old Chapter 7 case appeals the bankruptcy court's order granting summary judgment in favor of the defendants on his adversary claims against them for violation of the discharge injunction. The debtor's claims relate to marital property and marital debt division orders entered by a Colorado state court in his divorce proceedings. The bankruptcy court concluded the debtor's action was barred for a number of reasons, including the *Rooker-Feldman* doctrine, the principle of collateral estoppel or issue preclusion, and lack of standing. Having reviewed the record and the applicable law, we affirm the bankruptcy court's order.

## I. INTRODUCTION

In its order granting summary judgment, the bankruptcy court noted that "[t]his adversary proceeding results from the complicated confluence of bankruptcy and divorce proceedings."[3] The Colorado court that entered the orders giving rise to the debtor's claims described the divorce proceedings as "the most complex this Court has seen in over 25 years,"[4] and also commented that the debtor contested almost every issue in the case.[5] Additionally, the debtor and his former wife controlled numerous corporate entities involved in the bankruptcy

---

[2]   William Edward Hickson (1803–1870).

[3]   *Order Granting Defendants' Motion for Summary Judgment* ("Order") at 1, *in* Appellant's App. at 228, published at *Flanders v. Lawrence (In re Flanders)*, 517 B.R. 245, 249 (Bankr. D. Colo. 2014).

[4]   *Amended Final Orders* at 5, in Appellees' Supp. App. at 56.

[5]   *Id.*

proceedings that were marital assets with associated marital debt subject to division by the divorce court. Therefore, before setting forth the specific facts of the bankruptcy proceedings leading to this appeal, we lay some groundwork by identifying the parties and their controlled entities, and by briefly previewing facts that are critical to understanding the debtor's claims against the defendants for violation of the discharge injunction.

The plaintiff/appellant in this adversary matter is debtor Gary Woodrow Flanders ("Flanders"). When Flanders filed his bankruptcy petition, he was married to defendant/appellee Evelyn Jane Lawrence ("Lawrence"). Lawrence did not join the petition. Two years after Flanders filed for bankruptcy protection, Lawrence filed for divorce. The divorce proceedings continued in Colorado state court for more than eight years. Flanders' claims in this adversary proceeding arise out of the divorce proceedings and their interaction with his bankruptcy case.

The other defendants/appellees are: Daniel A. West ("West"), Lawrence's divorce attorney; James T. Burghardt ("Burghardt"), Lawrence's bankruptcy counsel; and Moye White LLP ("Moye White"), Burghardt's law firm (collectively the "Defendants"). Also involved in the underlying bankruptcy and divorce litigation are various corporate entities controlled by Flanders and Lawrence. The two companies wholly owned by Flanders are Great Northern Land Company and Canyon Quarry Company (the "Flanders Entities"). The entities wholly owned by Lawrence are Great Northern Transportation Company (together with its seven wholly owned subsidiaries), and American Rock Products Corporation (collectively the "Lawrence Entities," or individually a "Lawrence Entity"). As of the bankruptcy petition date, there was an outstanding promissory note made by Flanders and Lawrence to a Lawrence Entity in the amount of approximately $2 million.

The interaction of the bankruptcy and divorce proceedings leading to this appeal results primarily from the following three events. First, the bankruptcy trustee brought an adversary proceeding against Flanders, Lawrence, and the Lawrence Entities, alleging various fraudulent conveyances had been made. To conclude the adversary proceeding against her, Lawrence entered into a settlement agreement with the trustee and executed a mutual release. Second, after administration of the bankruptcy estate and payment of all debts in full, a surplus remained. The Colorado divorce court was then tasked with determining whether the bankruptcy surplus was marital property subject to division with Lawrence. The divorce court concluded the surplus was marital property despite Flanders' attempt to bar any claim Lawrence might have by arguing she waived it under the settlement agreement and mutual release in the bankruptcy trustee's adversary proceeding. Third, the divorce court entered a monetary judgment against Flanders that he claims violated the discharge injunction in his bankruptcy case. According to Flanders, the judgment is the result of the divorce court's treatment of a discharged debt. Flanders seriously mischaracterizes the nature and character of the judgment.

## II.    BANKRUPTCY PROCEEDINGS[6]

Flanders individually filed for Chapter 11 protection in 1998. After Flanders failed to submit a confirmable Chapter 11 plan, his case was converted to one under Chapter 7. Jeffrey L. Hill was appointed trustee ("Trustee"). Trustee subsequently put the Flanders Entities into Chapter 7 bankruptcy and served as trustee of those estates.

Lawrence filed for divorce from Flanders in October 2000. Shortly thereafter, Trustee, on behalf of the Flanders and Flanders Entities estates,

---

[6]    Unless otherwise indicated, this factual description is taken from the bankruptcy court's *Order*.

commenced an adversary proceeding against Flanders, Lawrence, and the Lawrence Entities, alleging fraudulent conveyances had been made ("Trustee's Adversary"). Trustee quickly reached settlement with Lawrence and the Lawrence Entities. The bankruptcy court entered an order approving the settlement agreement in April 2001 ("Settlement Agreement"). Thereafter, Lawrence and the Lawrence Entities entered into a mutual release with Trustee ("Mutual Release"), releasing the bankruptcy estates "from any and all claims and causes of action that have been made or could have been made in the Adversary Proceeding."[7] Flanders was not a party to the Settlement Agreement or Mutual Release, but resolution of the claims against Lawrence and the Lawrence Entities essentially resolved Trustee's claims against Flanders.

The Colorado state court entered a divorce decree in December 2001, but litigation over the division of marital property and marital debt continued. Meanwhile, the bankruptcy court granted Flanders a discharge in September 2002. After administering the estate for several years, Trustee filed his final report in July 2006. Following liquidation of Flanders' bankruptcy estate and payment of his unsecured creditors in full, a surplus of approximately $230,000 remained ("Surplus"). Trustee's final report indicated the Surplus was to be paid to Flanders.

The divorce court was informed of the Surplus, but by that time it had been garnished by the United States Attorney to pay a 2005 Oklahoma federal court judgment against Flanders in connection with his conviction for bank fraud. The federal district court instructed the Colorado divorce court to determine whether the Surplus was marital property. In February 2007, the divorce court entered an order concluding the Surplus constituted marital property on the basis that Colorado law presumes property held during marriage is marital property and

---

[7]     *Mutual Release* ¶ 2, at 2*, in* Appellees' Supp. App. at 41.

-5-

Flanders had not proven any portion of the Surplus was his separate property. The divorce court rejected Flanders' argument that, pursuant to the Settlement Agreement and Mutual Release executed in Trustee's Adversary, Lawrence had waived any claim she might have to the Surplus. Upon request, the Surplus was transferred to the divorce court's registry fund.

Flanders' bankruptcy case was closed in May 2008. Nine months later, the divorce court issued final orders dividing marital property and marital debt. It also entered a judgment in excess of $563,000 against Flanders in favor of Lawrence (the "Judgment"). Flanders contends the Judgment results from the debt on the $2 million promissory note executed by Flanders and Lawrence in favor of a Lawrence Entity ("Promissory Note Debt") that was discharged in his Chapter 7 case. In truth, the Judgment was comprised primarily of attorneys fees the divorce court found Flanders should pay as a result of his bad faith litigation and contribution to delay in the proceedings, all of which were generated post-petition.[8]

Flanders appealed the divorce court's final orders to the Colorado Court of Civil Appeals, which affirmed in May 2011, except for a limited remand not relevant to this appeal.[9] Flanders requested rehearing, which was denied in September 2011. Flanders then petitioned the Colorado Supreme Court for certiorari, which it denied in January 2013.

Undaunted, Flanders initiated this adversary proceeding in August 2013 asserting the divorce court, at the invitation of the Defendants, made

---

[8] The Judgment was made up of $513,754 in attorneys fees plus one-half of the differences between assets awarded to Lawrence and those awarded to Flanders, plus Flanders' remaining fines and restitution owing to the United States on account of his felony conviction, minus one-half of the value of the remaining marital personal property. *Order: Corrected Amended Final Orders* ¶ 54, *in* Appellees' Supp. App. at 74.

[9] *See Order* ¶¶ 25-26, 517 B.R. at 253.

determinations and rulings regarding division of marital property and marital debt that violated the discharge injunction provisions of 11 U.S.C. § 524.[10]  After being granted leave by the bankruptcy court, Flanders filed his second amended complaint ("Complaint") specifically contending, among other things, that:  1) the divorce court erroneously concluded the Surplus was marital property because Lawrence waived any claim to the Surplus via execution of the Settlement Agreement and Mutual Release in Trustee's Adversary; 2) the divorce court improperly treated the Promissory Note Debt as a marital debt; and 3) the divorce court improperly treated stock in the Flanders Entities and burial plots as marital property.  Flanders argued these assets were part of his bankruptcy estate abandoned to him when his bankruptcy case was closed.

To remedy the perceived errors on the divorce court's part, Flanders asked the bankruptcy court to hold the Defendants in contempt for violation of the § 524 discharge injunction.[11]  He also sought injunctive and declaratory relief that would essentially void the divorce court's orders and prevent the Defendants from enforcing the Judgment.  Flanders requested the bankruptcy court to impose sanctions, including attorneys fees, and to award consequential damages against Lawrence in the amount of the Surplus and the Promissory Note Debt, as well as punitive damages.

In April 2014, Burghardt and Moye White filed a motion to dismiss the Complaint, or in the alternative, for summary judgment.[12]  Lawrence and West

---

[10]     Unless otherwise indicated, all future statutory references in text are to the Bankruptcy Code, Title 11 of the United States Code.

[11]     Apparently, in Flanders' view, the Defendants' pursuit and obtainment of the divorce court's orders concerning the Surplus and the division of marital property constituted violations of the discharge injunction.

[12]     *Moye White Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) or, in the Alternative, for Summary Judgment, in* Appellant's App. at 170.

joined in the motion. The Defendants primarily argued the doctrines of issue and/or claim preclusion required Flanders' Complaint to be dismissed in its entirety. The Defendants also asserted the *Rooker-Feldman* doctrine deprived the bankruptcy court of jurisdiction over Flanders' claims seeking to overturn the divorce court's orders, and that Flanders did not have standing to seek damages for their alleged contempt. They further maintained the bankruptcy court should apply the equitable doctrine of laches to the Complaint Flanders filed in 2013 because it related to the divorce court's orders entered in 2007 and 2009, and thus it was prejudicially untimely.[13]

The bankruptcy court agreed with the Defendants that Flanders' claims were barred, and on September 16, 2014, entered its order granting the Defendants' motion for summary judgment and terminating Flanders' adversary proceeding ("Order"). The bankruptcy court concluded that although it could not revisit factual issues decided by the divorce court to the extent that an exercise of such jurisdiction would constitute an appeal of state court orders, Flanders' alleged willful violation of the federal discharge injunction is an independent claim which it was not barred from adjudicating by virtue of the *Rooker-Feldman* doctrine. The bankruptcy court determined that to the extent success on Flanders' contempt claims required relitigation of issues decided by the divorce court, the result was governed by principles of issue preclusion.[14] The bankruptcy court ruled that all of the elements of issue preclusion were met. Because Flanders' claims for violation of the discharge injunction depended upon reversal of factual adjudications regarding marital property and marital debt by the divorce court,

---

[13]     *Id.* at 14-16, *in* Appellant's App. at 183-85.

[14]     *Order*, 517 B.R. at 256-58.

Defendants were entitled to summary judgment.[15]

On September 29, 2014, Flanders filed a motion for extension of time to appeal. The bankruptcy court granted the motion, extending time until October 21, 2014. On October 20, 2014, Flanders timely filed his Notice of Appeal seeking review by this Court.

## III.   APPELLATE JURISDICTION

This Court has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[16] Neither party elected to have this appeal heard by the United States District Court for the District of Colorado. The parties have therefore consented to appellate review by this Court.

A decision is considered final "if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"[17] Here, the bankruptcy court's order granting the Defendants summary judgment on Flanders' Complaint is final for purposes of review because it resolved all claims as to all parties.[18]

---

[15]   *Id.* at 260.

[16]   28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8001(e) (*now at* Fed. R. Bankr. P. 8005, effective Dec. 1, 2014); 10th Cir. BAP L.R. 8001–3 (*now at* 10th Cir. BAP L.R. 8005-1, effective Dec. 1, 2014).

[17]   *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)).

[18]   *Order*, 517 B.R. at 262.

## IV.  STANDARD OF REVIEW

A ruling on summary judgment is reviewed *de novo*, applying the same legal standard used by the bankruptcy court.[19]  Summary judgment is appropriate and can be upheld only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.[20]  "In reviewing a summary judgment motion, the court is to view the record 'in the light most favorable to the nonmoving party.'"[21]  In this appeal, it is clear there were no disputed material facts.  Instead, Flanders disagrees with the bankruptcy court's conclusions regarding the *Rooker-Feldman* doctrine, the principles of issue preclusion, and standing to bring suit.

## V.  ANALYSIS

On appeal, Flanders argues the bankruptcy court erroneously granted the Defendants summary judgment based on the *Rooker-Feldman* doctrine[22] and issue preclusion.[23]  The Defendants assert this Court may affirm the bankruptcy court's Order on the alternative basis that Flanders is barred by the doctrine of laches from attempting, through filing this adversary proceeding in 2013, to collaterally attack state court orders entered in 2007 and 2009.[24]

---

[19]  *E.E.O.C. v. C.R. England, Inc.,* 644 F.3d 1028, 1037 (10th Cir. 2011); *Kojima v. Grandote Int'l Ltd. Liability Co. (In re Grandote Country Club Co.),* 252 F.3d 1146, 1149 (10th Cir. 2001).

[20]  Fed. R. Civ. P. 56(a), (c); *Donner v. Nicklaus*, 778 F.3d 857, 876 (10th Cir. 2015).

[21]  *Grandote,* 252 F.3d at 1149 (quoting *Thournir v. Meyer,* 909 F.2d 408, 409 (10th Cir. 1990)).

[22]  *See Appellant's Opening Brief* at 36-49.

[23]  *See id.* at 26-35.

[24]  *Answer Brief of Appellees James T. Burghardt and Moye White LLP* ("Answer Brief") at 4.  Lawrence and West both joined in this Answer Brief.

## A.    *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine implicates jurisdiction and federal courts are obligated to determine they have jurisdiction before proceeding to the merits of a case.[25]  Therefore, the bankruptcy court began its analysis by addressing the impact of the *Rooker-Feldman* doctrine on the claims made in Flanders' Complaint.  It held that

> to the extent [Flanders] seeks a finding of contempt and sanctions for Defendants' alleged willful violation of his discharge injunction, this is an independent claim which this Court is not barred from adjudicating by virtue of *Rooker-Feldman*.  By seeking such relief, [Flanders] is not seeking "review and rejection" of the Divorce Court's judgment.  Instead, he seeks sanctions for alleged violations of a federal court injunction.[26]

We agree with the bankruptcy court's conclusion.

The *Rooker-Feldman* doctrine prevents the "appeal" of a state court judgment to a federal court other than the United States Supreme Court.  It does so by prohibiting litigants from bringing suit in federal court "complaining of injuries caused by state-court judgments rendered before [federal] district court proceedings commenced and inviting district court review and rejection of those judgments."[27]  But the scope of the *Rooker-Feldman* doctrine is narrow and confined to cases of the kind from which the doctrine acquired its name:  cases brought by state-court losers that invite federal court review and rejection of the state court's judgments.[28]

In its 2005 decision in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,[29] the United States Supreme Court reformulated the *Rooker-Feldman* doctrine.  They

---

[25]    *Lance v. Coffman*, 549 U.S. 437, 439 (2007).

[26]    *Order*, 517 B.R. at 256.

[27]    *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

[28]    *Id.*; *Skinner v. Switzer*, 562 U.S. 521, 531-32 (2011).

[29]    544 U.S. 280 (2005).

-11-

did so, in part, because broad construction by some courts had the effect of "overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts," as well as "superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738."[30]  The Supreme Court explained that "[i]f a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'"[31]

Following the *Exxon Mobil* decision, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") again emphasized the narrowness of the *Rooker-Feldman* doctrine.  In *Campbell v. City of Spencer*,[32] the Tenth Circuit held that when the state-court judgment is not itself at issue, the *Rooker-Feldman* doctrine does not prevent a suit in federal court regarding the same subject matter, or even the same claims, as those presented in the state-court action.[33] *Rooker-Feldman* does not bar an action just because it seeks relief inconsistent with, or even ameliorative of, a state-court judgment.[34]  It bars claims complaining of injuries caused by wrongfully entered state-court judgments.[35]  As this Court has previously stated, when determining whether the *Rooker-Feldman* doctrine applies, "[t]he fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment

---

[30]     *Id.* at 283.

[31]     *Id.* at 293 (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).

[32]     682 F.3d 1278 (10th Cir. 2012).

[33]     *Id.* at 1283.

[34]     *Id.* at 1282.

[35]     *Id.* at 1283.

itself or is distinct from that judgment."[36]

In our case, Flanders' Complaint is long and complicated with eleven different claims for relief. However, all of Flanders' claims can be fairly read as allegations that, at the invitation of the Defendants, the divorce court took actions in violation of the automatic stay and discharge injunction provisions contained in the United States Bankruptcy Code. That being the case, Flanders' Complaint states independent federal claims, and the *Rooker-Feldman* doctrine does not bar federal-court jurisdiction over a state-court judgment that modifies a discharge in bankruptcy.[37]

*Rooker-Feldman* is not the only doctrine that potentially bars Flanders' claims. As the bankruptcy court correctly determined, "[t]o the extent that success on [Flanders'] contempt claims seeks relitigation of issues decided by the Divorce Court, principles of preclusion will govern the result."[38] Therefore, we must proceed to analyze whether the bankruptcy court correctly ruled Flanders' claims were barred under the rules of issue preclusion.

## B.     Issue Preclusion

The judicially-created, equitable doctrine of issue preclusion "prevents a party that has lost the battle over an issue in one lawsuit from relitigating the same issue in another lawsuit."[39] It "is intended to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing

---

[36]     *Hill v. Putvin (In re Putvin)*, 332 B.R. 619, 623 (10th Cir. BAP 2005) (quoting *State of Mo. ex rel. Nixon v. Audley (In re Audley)*, 275 B.R. 383, 390 (10th Cir. BAP 2002)).

[37]     *Hamilton v. Herr (In re Hamilton)*, 540 F.3d 367, 369 (6th Cir. 2008); *In re Pavelich*, 229 B.R. 777, 783 (9th Cir. BAP 1999); *In re Dabrowski*, 257 B.R. 394 (Bankr. S.D.N.Y. 2001). *But cf. In re Ferren*, 203 F.3d 559 (8th Cir. 2000).

[38]     *Order*, 517 B.R. at 256.

[39]     *Melnor, Inc. v. Corey (In re Corey)*, 583 F.3d 1249, 1251 (10th Cir. 2009).

inconsistent decisions, encourage reliance on adjudication."[40]  Pursuant to the full

faith and credit statute,[41] in order to determine the preclusive effect of a state

court judgment, a federal court must refer to the preclusion law of the state in

which such judgment was rendered.[42]  Here, Colorado law controls the effect of

the divorce court's orders.

> Under Colorado law,
>
> [t]he doctrine [of issue preclusion] applies to bar subsequent litigation *only if* (1) the issue sought to be precluded is identical to an issue actually and necessarily determined in the prior proceeding; (2) the party against whom estoppel is asserted has been a party to or is in privity with a party to the prior proceeding; (3) there is a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.[43]

Additionally, the Colorado Supreme Court has indicated that "[e]ven if not

explicitly determined, an issue is nevertheless considered to have been 'actually'

determined for purposes of collateral estoppel if its resolution is necessarily

implied in an actual determination."[44]

The bankruptcy court correctly concluded the principles of issue preclusion

prevent Flanders from collaterally attacking determinations of the divorce court.

Three of the four issue preclusion requirements set forth above are clearly met

and require only brief discussion.  First, Flanders, the party whom the Defendants

assert is estopped, was a party to the prior proceedings.  Second, addressing the

definition of finality, the Colorado Supreme Court has concluded that "in order to

---

[40]  *Nichols v. Board of Cty. Comm'rs*, 506 F.3d 962, 967 (10th Cir. 2007) (quoting *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84 (Colo. 1999) (citations and internal quotation marks omitted)).

[41]  28 U.S.C. § 1738.

[42]  *Marrese v. Am. Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 380 (1985); *Nichols*, 506 F.3d at 967.

[43]  *Reynolds v. Cotten*, 274 P.3d 540, 543 (Colo. 2012).

[44]  *Id.* at 544.

be accorded preclusive effect, a judgment must be 'sufficiently firm' in the sense that it was not tentative, the parties had an opportunity to be heard, and *there was an opportunity for review*."[45]  Here, there is no longer an appeal pending with respect to the divorce court's orders, and the Colorado Court of Appeals remanded on a very limited issue not relevant to this appeal.  Thus, the divorce court's determinations and orders that Flanders seeks to attack are final and can be given preclusive effect.

Third, with respect to a "full and fair opportunity to litigate," the Colorado Supreme Court has held that such requirement inquires

> whether the remedies and procedures in the first proceeding are substantially different from the proceeding in which collateral estoppel is asserted, whether the party in privity in the first proceeding has sufficient incentive to vigorously assert or defend the position of the party against which collateral estoppel is asserted, and the extent to which the issues are identical.[46]

Here, Flanders had sufficient incentive, and did in fact, vigorously litigate all issues of classification and division of marital property and marital debt before the divorce court.  In its orders, the divorce court stated that "Flanders' actions in contesting almost every motion contributed virtually nothing to the marital estate," and some of his "actions have been taken in bad faith as he has continued to present arguments and take up court time with arguments that had been previously rejected."[47]

Having easily established the presence of three of the four issue preclusion requirements, we turn our attention to the final requirement:  that the issue sought to be precluded is identical to an issue actually and necessarily determined in the prior proceeding.  This critical requirement is also met here because Flanders'

---

[45]    *Rantz v. Kaufman*, 109 P.3d 132, 141 (Colo. 2005) (quoting *Carpenter v. Young*, 773 P.2d 561, 568 (Colo. 1989)).

[46]    *McNichols v. Elk Dance Colorado, LLC*, 139 P.3d 660, 669 (Colo. 2006).

[47]    *Amended Final Orders* ¶ 47, at 17-18, *in* Appellees' Supp. App. at 68-69.

claims for violation of the bankruptcy discharge injunction are dependent upon arguments already adjudicated by the divorce court. One of the major factual issues underlying Flanders' claims is the effect of Lawrence's execution of the Settlement Agreement and Mutual Release in the Trustee's Adversary. Flanders argues the divorce court incorrectly designated the Surplus as marital property subject to division because Lawrence waived any claim she potentially had pursuant to the terms of the Settlement Agreement and Mutual Release. As the bankruptcy court correctly found, that factual issue was carefully considered and ruled on by the divorce court.[48] The divorce court specifically concluded that Lawrence did not waive any claim she may have to the Surplus by executing the Settlement Agreement and Mutual Release.[49] Therefore, Flanders was not entitled to litigate the issue again before the bankruptcy court.

A second disputed factual underpinning of Flanders' claims is the effect of the divorce court's classification of the Promissory Note Debt as "marital debt." Flanders argues his liability on the debt was discharged in his bankruptcy case, and somehow believes that its classification as "marital debt" by the divorce court resulted in an "offset" of a debt as a personal liability of the debtor in violation of the discharge injunction.[50] He further asserts this classification gave rise to the

---

[48] *Order*, 517 B.R. at 259-60.

[49] Id.

[50] According to Flanders,

The irrelevant conclusion of the divorce court and the convoluted manner in which that conclusion was applied against the value of an asset of the marital estate constituted the collection of a discharged debt against Flanders by an unlawful offset and as such, the divorce court's Order in that regard is void *ab initio*. The Divorce Court judgment has therefore "modified" the Bankruptcy Court's Discharge regarding Flanders' former debt to Ms. Lawrence and GNTC, and said order is therefore void *ab initio*.

Opening Brief at 19.

divorce court's Judgment against him.[51]  The bankruptcy court found the divorce court considered the effect of Flanders' discharge and determined the Promissory Note Debt was a marital debt that could be considered in determining the division of marital assets.  As a result, the bankruptcy court correctly concluded Flanders was precluded from relitigating the classification of the Promissory Note Debt as marital debt in his attempt to establish a discharge violation by the Defendants.[52]

Even if the requirements of issue preclusion were not met here, Flanders' assertion that there has been a violation of the provisions of § 524(a)(2) is wholly without merit.  The Promissory Note Debt may have been discharged, but contrary to Flanders' contentions, the divorce court's orders did not make Flanders "responsible" in any way for this debt.  There is nothing in the divorce court's orders that would allow Lawrence or the Lawrence Entity to enforce the Promissory Note Debt against Flanders, or that has that effect.[53]  Instead, the divorce court only determined that the Promissory Note Debt was "marital debt"[54] for purposes of dividing marital property.[55]

---

[51]     *Appellant's Opening Brief* at 16.

[52]     *Order*, 517 B.R. at 260.

[53]     Again, Flanders' suggestion that there was an offset of the Promissory Note Debt that resulted in the Judgment is fiction.  The Judgment consists primarily of the divorce court's imposition of attorneys fees for his bad faith litigation conduct.

[54]     Under Colorado law, marital liabilities include all debts that are acquired and incurred by a husband and wife during their marriage.  *In re Marriage of Jorgenson,* 143 P.3d 1169, 1172 (citing *In re Marriage of Speirs*, 956 P.2d 622 (Colo. App. 1997)).  Therefore, the Promissory Note Debt constituted a marital debt regardless of whether Flanders ever had any personal liability because Lawrence remained liable on the debt, and the divorce court stated it was convinced that the $1,900,000 in funds procured from the loan was used by the parties for marital expenses.  *Amended Final Orders* ¶ 19, at 9, *in* Appellees' App. at 60.

[55]     The bankruptcy court discusses this alternative merits ruling in a footnote of its Order:

(continued...)

## C.    Lack of Standing

The bankruptcy court also addressed Flanders' assertion that because the Surplus was property of the bankruptcy estate, the divorce court's order directing the funds to be paid to its registry constituted a violation of the automatic stay provisions of § 362.[56]  The bankruptcy court first noted that the Surplus was not property of the estate when the divorce court issued its order, and therefore pursuant to § 362(c)(1), the automatic stay was no longer applicable.  At the time the divorce court entered its order, the Surplus had been actually or constructively distributed to Flanders in that it was being held in the registry of the United States District Court after being garnished for payment of Flanders' criminal judgment.[57]  The bankruptcy court then ruled that, assuming "for the purpose of the [Defendants'] motion for summary judgment, the [bankruptcy estate surplus] funds had not been distributed to [Flanders] and remained estate property, [Flanders] has no standing to request an order declaring the Bankruptcy Surplus

---

[55]    (...continued)
The application of the doctrine of issue preclusion is a matter of equity and a court may decline to apply the doctrine even when the elements for its application are present.  Even had this Court determined not to apply the doctrine, Debtor would lose on the merits of this claim.  Debtor's discharge of personal liability on the promissory note to GNTC only barred collection of the note as a personal liability of the Debtor.  11 U.S.C. § 524(a)(2).  It did not bar the Divorce Court from characterizing the debt as a marital debt. The Divorce Court's analysis of the marital nature of the debt, as well as the overall property division between Ms. Lawrence and Debtor, was clearly within the broad discretion of the Divorce Court to make an equitable distribution of marital property after considering all relevant factors, including the contributions of each spouse, the value of property set apart to each spouse, the economic circumstances of each spouse, and any increase, decrease, or depletion in the value of any separate property during the marriage.

*Order*, 517 B.R. at 260-61, n.6 (citation omitted).

[56]    It does not appear that Flanders made this argument as a "claim for relief" in his Complaint.  Instead his contention is part of his "Factual Allegations Common to All Counts."  *See Complaint* ¶ 45, at 10, *in* Appellant's App. at 149.

[57]    *Order*, 517 B.R. at 261.

-18-

Order void *ab initio.*[58]   The bankruptcy court explained that the trustee, as representative of the estate, is the proper party to seek redress for an alleged violation of the automatic stay.[59]   The bankruptcy court also ruled that the automatic stay was not in effect as to actions to collect from Flanders because, pursuant to § 362(c)(2), it had terminated some four years earlier when Flanders was granted his Chapter 7 discharge.[60]

In his Opening Brief on appeal, Flanders generally asserts the bankruptcy court "erred in its conclusion that Debtor is precluded from arguing all of the issues that he raised in his Complaint."[61]   However, other than such assertion, Flanders does not make any specific argument regarding the bankruptcy court's determination that he did not have standing to pursue alleged violations of the automatic stay.[62]   As a result, Flanders is deemed to have waived this issue on appeal.[63]

---

[58]     *Id.*

[59]     *Id.* at 261-62.

[60]     *Id.* at 262.

[61]     *Appellant's Opening Brief* ¶ 9, at 2.

[62]     Flanders does argue on appeal that the bankruptcy court erred in concluding that the divorce court had subject matter jurisdiction to issue orders regarding after-acquired property.  Opening Brief at 54-59.  However, the substance of this argument appears to be simply another incarnation of Flanders' contention that the divorce court erroneously interpreted the Settlement Agreement and Mutual Release, an argument that has already been determined to be subject to issue preclusion principles.

[63]     *In re Taylor*, 737 F.3d 670, 682 n.9 (10th Cir. 2013) (arguments perfunctorily or inadequately briefed are waived); *In re Repine,* 536 F.3d 512, 518, n.5 (5th Cir. 2008) (issues not adequately briefed are waived); *Sw. Pa. Growth Alliance v. Browner*, 121 F.3d 106, 122 (3d Cir. 1997) ("appellate courts generally should not address legal issues that the parties have not developed through proper briefing").

**D.    Laches**

In their Answer Brief, the Defendants argue this Court may affirm the bankruptcy court's Order on the alternative basis that Flanders is barred by the doctrine of laches from attempting, through filing this adversary proceeding in 2013, to collaterally attack the Colorado state court orders entered in 2007 and 2009.[64]  Derived from the principle that "equity aids the vigilant and not those who slumber on their rights," the laches defense bars a party's dilatory claim,[65] when there is: "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense."[66]  Whether the doctrine of laches bars a particular action or claim is a decision primarily addressed to the discretion of the trial court.[67]

The Defendants raised the issue of laches before the bankruptcy court, but the Order granting summary judgment does not discuss laches.  Thus, the bankruptcy court rejected, at least implicitly, the doctrine of laches as a basis for barring Flanders' Complaint.  Given that this Court may not disturb a bankruptcy court's ruling on laches in the absence of abuse of discretion,[68] and having already determined that Flanders' claims are barred by the principles of issue preclusion, we decline the Defendants' invitation to address the laches issue on appeal.

---

[64]    *Answer Brief of Appellees James T. Burghardt and Moye White LLP* ("Answer Brief") at 4.  Lawrence and West joined in this Answer Brief.

[65]    *Biodiversity Conservation All. v. Jiron*, 762 F.3d 1036, 1091 (10th Cir. 2014) (quoting *Kansas v. Colorado*, 514 U.S. 673, 687 (1995) (quotations omitted)).

[66]    *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121-22 (2002) (quotations omitted)).

[67]    *Id.* at 1090 (quoting *Burnett v. New York Cent. R.R. Co.*, 380 U.S. 424, 435 (1965)).

[68]    *Id.* (quoting *Brunswick Corp. v. Spinit Reel Co.*, 832 F. 2d 513, 523 (10th Cir. 1987)).

## VI.  CONCLUSION

The *Rooker-Feldman* doctrine does not prevent the bankruptcy court from exercising jurisdiction over Flanders' claims against the Defendants for violation of the discharge injunction.  However, to the extent that a debtor's claim for violation of the discharge injunction depends on facts already adjudicated by a state court, the principles of issue preclusion apply to prevent him from relitigating them in federal court, thereby maintaining the integrity of the state court's orders.  In this case, issue preclusion bars Flanders' causes of action because the facts essential to his claims have been litigated and adjudicated by the divorce court.  Accordingly, the bankruptcy court's Order is affirmed.[69]

---

[69]  Also pending before this court are the Moye White Defendants' *Motion to Strike Selected Statements in Appellant's Reply Brief as Unsupported by the Record* (Docket No. 53 filed on June 11, 2015), Appellant's *Motion for Leave to File Sur-Reply* (Docket No. 70, filed on July 8, 2015), as well as numerous responses and replies to those documents.  In light of our decision, we deny the Motion to Strike and the Motion for Leave as moot.